Bertram Harnett, J.
This proceeding was instituted pursuant to article 78 of the CPLR by Mr. and Mrs. Banks, public assistance recipients, compelling respondents to pay the balance owed by the Banks for the installation of a heating system in their home.
Mrs. Banks is the fee -owner of the home where she and her husband live together with their six minor children. In 1965, before the Banks were receiving public assistance, they ordered on time payment the installation of a heating system for the second floor of their home to make that floor habitable for the children of their burgeoning family during the winter. They have been receiving public assistance continuously since 1966.
Mr. and Mrs. Banks paid their monthly installments on the balance for the heating system through January 1969. There is no evidence that the heating system is defective, nor do respondents in any way claim the installation is unreasonable to the Banks’ circumstances. The issue then turns simply on installment payments for a four-year-old ordinary working heating system whose installation predated the using family’s entrance on public assistance.
In May, 1969, the Banks were served with a summons in an action to recover the balance due on the heating system. They requested the Nassau County Department of Social Services to issue a special grant to pay the balance owed, which the Department refused. The Banks then resorted to their administrative remedies by requesting a fair hearing to appeal that determination. In his decision dated February 10, 1970, State Commissioner Wyman, one of the respondents, affirmed the determination of the Nassau County Department of Social Services on the ground that special grants are permitted only for current needs and that a pre-existing debt is not a current need as defined by 18 NYCRR 352.4 (a) (11).
Petitioners then instituted this proceeding alleging that the determinations of the respondents (both county and State levels) were arbitrary, capricious and erroneous as a matter of law. A second ground, lack of substantial evidence in the record *948 of the fair hearing, was specifically abandoned by the Banks’ attorney in open court on the return date of the petition.
Respondents’ refusal to make the requested grant is based essentially on two grounds. First, the need is not such a ‘1 current need” as qualifies under the regulation for assistance grants. Second, the regulations permit grants to repair existing systems but not the cost of installing one.
18 NYCRR 352.4 (a) (11), in part, provides: “Assistance grants shall be made to meet only current needs. Under the following specified circumstances payment for services or supplies already received is deemed a current need, (i) [lost or stolen checks], (ii) [current rent], (iii) [utilities], (iv) [prior rent, taxes or mortgage]. Respondents argue that the enumeration of circumstances under which grants can be made for supplies and services excludes repairs to property.
The court can appreciate an argument that the regulatory provision for payment for supplies and services as “ current needs ” does not encompass this grant. Quite plausibly the grant may be considered not for a ‘ ‘ supply ” or a “ service ’ ’ as those terms are commonly used, but rather for acquistion of a capital element of “ shelter ”.
However, resolution of this “ current needs ” point is not necessary since the real issue of the case centers about the respondent’s obligation to furnish shelter. Whether in their own home, in a rented apartment, or a motel room, or wherever, public assistance recipients must live decently some place. (Social Services Law, § 131-a, subd. 1; §§ 157, 350; 18 NYCRR 352.4,[a] [7].)
Respondents essentially argue that where the recipient lives in his own private home, the public shelter obligation is limited to repairing the property and not to installing or paying for any new heating system in a part of the home which previously did not have a heating system. Whatever technical appeal this might have to a literalist, it fails to take into account the fact that in Long Island in the winter, heating is a vital and indeed indivisible part of adequate shelter. Respondents cannot let part of the recipient family freeze and in the final analysis must do something to assist them. If this family of eight people is to lose the use of the second story of the house, respondents will then be in a position of relocating it in other premises, or possibly dividing it and moving out some of the children.
Since respondents do not claim that the expenditures were unreasonable or improperly incurred, or that published allowances will be exceeded, the court will assume the requested payments are reasonable and proper. In Nassau County, anyone *949 may easily gather from the newspapers and official pronouncements that residential quarters are in scarce supply and that recipients of public assistance are housed at high cost in insufficient motel facilities, or even in antiquated military housing from World War II. Accordingly, it strains rationality to accept a position that since this family reasonably owes money on a heating system installed before it fell upon public assistance, the use of its own home must now be lost because the family cannot afford to make payment by dint of the very economic circumstances which placed it on public assistance in the first place. The odd feature of respondents’ argument is that they will not make payment because the system is working and will instead let it be removed from the house, but they will make payment if the system breaks down and requires repair. ('See 18 NYCRR 352.4 [a] [7] [v] [c].)
The intense desirability of maintaining the family together where reasonably possible requires no citation.
In sum, the court rules that respondents must provide shelter for the Banks family so long as they are recipients of public assistance and that under the circumstances presented here, respondents should make the requisite provision to assure proper heating of the second story of the residence.