In the Matter of HUGH BANKS et al., Appellants-Respondents, *v.* GEORGE K. WYMAN, as Commissioner of Social Services of the State of New York, Respondent-Appellant et al., Respondent.

Second Department, June 19, 1972.

Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz and Maryellen Weinberg of counsel), for respondent-appellant.

Leonard S. Clark (Burr C. Hollister of counsel), for appellants-respondents.

SHAPIRO, J.  The Commissioner of the Department of Social Services of the State of New York appeals from a judgment awarding the petitioners, recipients of public assistance, a public assistance grant of $623 to pay the balance owing and unpaid to Sears, Roebuck & Co. (Sears) on a space heating system for the second story of a house which is owned and used by the petitioners as their residence.  The petitioners obtained the judgment in a proceeding pursuant to article 78 of the CPLR brought by them to review a decision made by the Commissioner, after a statutory fair hearing, in which he affirmed a decision of the Nassau County Department of Social Services denying the petitioners' application for a public assistance grant for that purpose.

#### QUESTION PRESENTED

Whether the balance due on a debt contracted by the petitioners for a home heating system before they became recipients of public assistance is an item of "current needs" within the regulations of the State Department of Social Services promulgated pursuant to the Social Services Law, so as to entitle the petitioners to a special grant, over and above their regular allowances, for payment of the debt.

#### THE FACTS

The petitioners are the father and mother of six minor children who live in a home owned by the mother in Hempstead, New York.  The petitioners are now receiving public assistance.  In 1965, when they were not receiving public assistance, and at a cost of about $1,000, they purchased a heating system for the second floor of their home to make it habitable, during the winter, as sleeping and living quarters for their children.  The purchase was made on the installment plan.  In 1966 the petitioners began to receive public assistance and have continued to receive it ever since.  They stopped making payments on the heating system in January, 1969.  In May, 1969 Sears sued for the unpaid balance of about $600.  In September, 1969 the petitioners' application for a special grant to pay the balance

was rejected. On February 10, 1970, State Commissioner Wyman affirmed that rejection on the ground that "assistance grants shall be made to meet only current needs" and that, although "in specified circumstances payment for services or supplies all ready [*sic*] received is deemed a current need," the special grant requested by the petitioners "is not one of the specified exceptions."

### DECISION BELOW

In June, 1970 the petitioners brought this proceeding pursuant to article 78 of the CPLR, which resulted in the reversal of the Commissioner's ruling (*Matter of Banks* v. *Wyman,* 63 Misc 2d 946). In granting the petition and directing payment of the grant sought by the petitioners, Mr. Justice HARNETT noted that the petitioners, in appealing to the court, had abandoned their claim of lack of substantial evidence in the record of the fair hearing to sustain the Commissioner's finding, leaving for the determination of the court only the question of whether the Commissioner's denial of the grant was arbitrary, capricious and erroneous as a matter of law. He held that it was and I agree with him.

### THE LAW

Both sides agree that the governing statute is section 131-a of the Social Services Law, which provides in relevant part in subdivision 1 thereof that "provision [for the needs of public assistance recipients] * * * shall be made in monthly or semi-monthly allowances and grants within the limits of the schedules included in this section except for additional amounts which shall be included therein for shelter, fuel for heating," etc. (bracketed matter supplied). The same section also provides in subdivision 6: "Notwithstanding any other provisions of this chapter or other law, a social services official may make provisions for the following items and services: * * * (c) essential repair of heating equipment, cooking stoves, and refrigerators used by persons in need of public assistance in their homes, provided provision therefor cannot otherwise be made."

The regulations issued by the Commissioner of the Department of Social Services pursuant to the foregoing section dealing with allowances and grants for other items of need appear currently in section 352.7 of the regulations (18 NYCRR 352.7). They show an awareness of the need to provide heated shelter. Thus, paragraph (1) of subdivision (a) directs each social service district to provide for the purchase of necessary furniture

including household furnishings, equipment and supplies; and lists in the equipment to be provided in accordance with individual need "stove for heating". The same section authorizes grants for "the essential repair of heating equipment" (subd. [b]). The provisions of this section for payment for services and supplies already received (now subdivision [g] of section 352.7; it was paragraph [10] of subdivision [a] of section 352.4 when this matter was considered by the Commissioner) state in part: "Assistance grants shall be made to meet only current needs."

It is this last quoted provision of section 352.7 of the regulations which was the basis for the Commissioner's upholding of the denial of the grant sought by the petitioners. He found an absence of the "current needs" specified in the above provision and he added that, while the regulation authorized a grant for repair of an existing heating system (subd. [b]), it did not authorize payment for the cost of installing one.

His position, however, failed to take account of the sensible policy embodied in subdivision (h) of section 352.7, entitled "Chattel mortgages or conditional sales contract", which provides: "If the furniture or household equipment of an applicant, who has not been a recipient of public assistance within the previous six months preceding his application, is essential to making his living accommodations habitable but are presently encumbered by a chattel mortgage or a conditional sales contract, every effort shall be made to defer, cancel or reduce payments on such chattel mortgage or conditional sales contract. If all such efforts fail, an allowance may be made for a compromise settlement of such payments or, if a compromise cannot be reached, for other essential payments; provided, however, that the compromise settlement or allowances shall not exceed the cost of replacement."[1]

It seems clear that what this regulation seeks to provide for is a situation such as exists here, the possible loss, by repossession for nonpayment of installments due, of a piece of household equipment belonging to an applicant for public assistance and essential to making his living accommodations habitable. Of course, the petitioners herein are *recipients* of, rather than *applicants* for, such public assistance but to allow such a tenuous distinction to result in the removal of the heating system from their home would violate the basic humanitarian and economically sensible policy embodied not only in the quoted sec-

1. Upon the argument of this appeal counsel for the appellant conceded that Sears had a security interest in the heating system.

tion of the regulation but also of section 350 of the Social Services Law, which provides in part: "1. (a) Allowances shall be adequate to enable the father, mother or other relative to bring up the child or minor properly, having regard for the physical, mental and moral well-being of such child or minor, in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law."

It simply defies logic to hold that subdivision (h) of section 352.7 of the regulations must result in a denial to the petitioners of the relief they seek because they did not seek help from the social services officials for the continued payment of the installments until some years after they first began to receive public assistance, managing somehow to keep up their payments until then. Such an inflexible and wooden interpretation looks to its letter and nullifies its spirit and intent by punishing the petitioners for their diligence, and even possibly for their self-sacrifice, in carrying out the commitments they made before receiving public assistance and for some period thereafter. Eloquently voicing this thought the court in *Matter of Petterson* v. *Daystrom Corp.* (17 N Y 2d 32, 38) said: "But we are not bound to accord a literal interpretation to this language if to do so would lead to an egregiously unjust or unreasonable result. (See, e.g., *Eck* v. *United Arab Airlines,* 15 N Y 2d 53, 62; *Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677, 685; see, also, *Cabell* v. *Markham,* 148 F. 2d 737, 739, affd. 326 U. S. 404.) ' In construing statutory provisions,' we wrote in the *New York Post* case (2 N Y 2d 677, 685–686, *supra*), ' the spirit and purpose of the statute and the objectives sought to be accomplished by the legislature must be borne in mind. " The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to ' defeat the general purpose and manifest policy intended to be promoted '. " (*People* v. *Ryan,* 274 N. Y. 149, 152; see, also, *Matter of United Press Assns.* v. *Valente, supra,* 308 N. Y. 71, 83–84; *Matter of River Brand Rice Mills* v. *Latrobe Brewing Co.,* 305 N. Y. 36, 43–44.) ' "

In support of his position, the Commissioner urges that there is no demonstration by the petitioners that there is a current need to pay the amount for which Sears holds a judgment against them and that therefore the test of current need required by subdivision (g) of section 352.7 of the regulations is not met. He argues that the payment for services or supplies already received can qualify as a " current need " only if it falls into the four categories specified in subdivision (g). These are (1) lost checks, (2) rent for the month in which the case is

accepted if essential to retain the living accommodations, (3) taxes and interest on a mortgage for the billing period immediately preceding acceptance, if essential to the health and safety of the recipient, and (4) *rent,* taxes or mortgage of an applicant for a period prior to the month in which the case was opened or prior to the period in which a current bill was due, if necessary to forestall eviction and no other facilities are available, *or if the health and safety of the applicant or recipient is severely threatened by failure to make such payment.*

Of course, the petitioners' situation might well fall under the last of the four categories listed above were it to be read as applicable to a debt for a heating system, normally a service included in rent, or to the fact that the failure to have heat might severely threaten the health and safety of their children, but the short answer to the contention is that the matter falls under subdivision (h) of the regulation, not subdivision (g).

In an effort to overcome the finding of Mr. Justice HARNETT that the grant was authorized under the provision of section 131-a of the Social Services Law requiring the furnishing of shelter to public assistance recipients, the Commissioner contends that there is nothing in the record to show that the petitioners do not have adequate shelter. However, unless justice is truly blind, notice may be taken of the fact that in Long Island, in the winter, heating is a vital and indivisible part of adequate shelter and that the Commissioner could not consistent with performance of his statutory obligations, let part of the recipient family freeze (*Matter of Banks* v. *Wyman,* 63 Misc 2d 946, 948, *supra*).

It is clear that the creditor (Sears) intends to repossess the heating system and is only withholding doing so until the Department of Social Services determines whether it is going to pay the balance due.[2]

---

2. Aside from what is revealed by the fair hearing minutes and the conceded fact that Sears has a security interest in the heating system, Sears may, under CPLR 5205, satisfy its judgment against the petitioners by levying on the heating system itself, since the judgment is for the purchase price of the heating system and the exemption from such levy which would ordinarily attach to a householder's heating system is not applicable. See, also, CPLR 5232 (subd. [b]) and *Prior* v. *Cunningham* (33 A D 2d 853, affd. 27 N Y 2d 502) where it was held that sections 137 and 137-a of the Social Services Law preclude levy or execution only as to those funds specifically enumerated in the statute and do not exempt recipients of public welfare assistance entirely from any levy and execution but only as to those funds thus specifically enumerated. See, also, CPLR 5235, under which the petitioners' home might become subject to levy under the judgment obtained by Sears.

I do not believe that a law which clearly lays down a policy of concern for the physical, mental and moral well-being of children of public assistance recipients (Social Services Law, § 350) and regulations which authorize special grants where the health and safety of a recipient are severely threatened by failure to make a payment on his behalf (18 NYCRR 352.7 [g] [6] [ii]) are implemented by a policy of brinkmanship which requires public assistance recipients to await a knock on the door by the sheriff coming to reclaim their heating system or to inform them that their home is going on the auction block before they can obtain aid from the Department of Social Services to avert such a catastrophe.

Judge LEARNED HAND most eloquently expressed the same thought when he said, " There is no more likely way to misapprehend the meaning of language — be it in a constitution, a statute, a will or a contract — than to read the words literally, forgetting the object which the document as a whole is meant to secure " (*Central Hanover Bank & Trust Co.* v. *Commissioner of Internal Revenue*, 159 F. 2d 167, 169; see, also, to the same effect, *Rankin* v. *Shanker*, 23 N Y 2d 111, 114; *Abood* v. *Hospital Ambulance Serv.*, 30 N Y 2d 295).

The Commissioner relies on the recent decision in *Matter of Howard* v. *Wyman* (28 N Y 2d 434), where the Court of Appeals ruled that a loss by burglary of clothing and furniture by a welfare recipient was not subject to a replacement grant under a statutory provision authorizing replacement of such items lost as a result of " ' fire, flood or other like catastrophe ' " (p. 436). This ruling was based on the fact that a burglary is far too unlike a fire or flood to be included in the term " ' like catastrophe ' " (p. 438).

I am not unaware that in the same case the court said, " The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld " (p. 438). But here the construction given by the administrative agency, in my opinion, is not only unreasonable; it is also inconsistent both with the purpose and intent of the statute and with the provisions of the agency's own regulations.

Therefore the judgment should be affirmed, without costs.[3]

MUNDER, Acting P. J. (dissenting). The only issue here is whether the construction applied by the Commissioner of the

---

3. I do not reach the question of interest raised by the cross appeal since it appears from the petitioner's brief that he merely requests affirmance of the judgment.

Department of Social Services is rational and reasonable. The petitioners sought a public assistance grant of $623 to pay the balance due Sears, Roebuck & Co. for a space heating system purchased in 1965, at a time when the petitioners were not receiving public assistance. The Commissioner, relying upon regulations issued under section 131-a of the Social Services Law (namely, 18 NYCRR 352.4 [a] [10] [now 18 NYCRR 352.7 (g)]), which state that assistance grants are to be made only to meet *current needs,* affirmed a determination denying the petitioners' request.

The regulations include specified circumstances in which payment for supplies "already received" is deemed to be for a current need, but none of them cover the situation at bar. Here, the item was purchased approximately four years prior to the time the petitioners sought assistance. The majority would overrule the Commissioner's determination by applying a subdivision of the pertinent regulation which by its very terms is not applicable to the petitioners. The majority would substitute the word "recipient" for "applicant" in subdivision (h) of regulation 352.7 and ignore the phrase "who has not been a recipient of public assistance within the previous six months preceding his application." This would be done purportedly to carry out the "spirit and intent" of the Social Services Law.

It seems to me that such a task is best left to the agency administering the statute. This was what the Court of Appeals stated recently in *Matter of Howard* v. *Wyman* (28 N Y 2d 434, 438), by piecing together language from prior decisions in its own court and the Supreme Court of the United States (citations omitted): "'Statutory construction is the function of the courts "but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited" * * *. The administrative determination is to be accepted by the courts 'if it has ' warrant in the record ' and a reasonable basis in law " * * *. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body" * * * '.'"

MARTUSCELLO and BENJAMIN, JJ., concur with SHAPIRO, J.; MUNDER, Acting P. J., dissents and votes to reverse, to confirm the determination and to dismiss the proceeding, with an opinion, in which CHRIST, J., concurs.

Judgment affirmed, without costs.