Bertram Harnett, J.
Frank and Margie Holmes reside with their four infant children in a one-family house in Rockville Centre, New York. Their mortgage payments on the house are $126 per month, and the Holmes receive public assistance to meet this shelter need as well as family needs for other basic necessities.
On July 27, 1967, W. T. Grant, Inc. (Grant’s) recovered a judgment in the amount of $500 against the Holmes and in May, 1972 executed upon the family home in order to collect the judgment debt. The Holmes admit that the money is properly owed to Grant’s, but seek in this proceeding to set aside the execution in order to prevent the loss of their home in the eventual sheriff’s sale.
Pursuant to CPLR 5240, the court has broad discretionary powers to ‘ ‘ make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure ”. (See Dime Sav. Bank of N. Y. v. Barnes, 67 Misc 2d 837.) The exercise of these powers requires harmonizing thé judgment debtor’s interest in avoiding irreparable family harm resulting from execution upon the real property with the legitimate interest of a creditor in securing payment of a valid debt.
The forced sale of a family home housing two adults and four teenage children will result in serious disruption and loss of family security, both as regards their permanent shelter and the education and neighborhood associations of the children. Moreover, the critical housing shortage in Nassau County is a publicly known fact (see Matter of Banks v. Wyman, 63 Misc 2d 946, 948, affd. 39 A D 2d 215) and the problems inherent in relocating this family should a sheriff’s sale and eviction ensue, are formidable, if not prohibitive as regards securing housing at a comparable cost to the Holmes’ present monthly mortgage.
While the house itself may not be strictly exempt from execution pursuant to section 137-a of the Social Services Law which applies only to “ wages, salary, commissions or other compensation paid or payable by an employer to a person while he is in receipt of public assistance,” it is nonetheless true that the *488 sought-after home here is not merely a peripheral asset, but is a basic necessity integrally related to the meeting of daily needs of this family of six. Therefore, while the Holmes ’ equity in the property is not the equivalent of the current basic shelter grant and is not exempt from execution under section 137 of the Social Services Law (see Consumer Credit Corp. v. Lewis, 63 Misc 2d 928; 22 Syracuse L. Rev. 334), the home nonetheless represents a current vital resource presently enjoyed by virtue of prior public assistance grants, the loss of which might fairly be described as catastrophic to the family welfare. In principle then, under these circumstances, an equitable priority exists in the continued use of the property to house the needy family.
The'creditor on the other hand has a lien against the property from the date of the filing of the judgment which secures the eventual payment of the debt, either through periodic voluntary payments or by a charge against the Holmes’ equity when the house is finally sold. There has been no showing that Grant’s lien on the property is insufficient to protect its long-term interest, or that other liens filed on the property have priority to nullify Grant’s interest.
While the relative enormity of the harm to the homeowner is greater than that to the creditor, the creditor’s interest in immediate collection of the debt is no doubt real. But, where execution would effect such damage to a family already living marginally, and the debt is in any event ultimately secured, there is a valid basis for postponing radical enforcement and protecting the home.
It is appropriate that the debt not be placed in complete limbo, but that the Holmes pay a reasonable monthly sum towards the outstanding balance as an alternative means of satisfying the judgment and at the same time preserving the family shelter unit. (See Matter of Banks v. Wyman, supra; cf. Social Services Law, § 137.)
Accordingly, judgment is granted in favor of petitioners, staying the execution upon and sheriff’s sale of petitioners’ home, provided that petitioners pay to respondent, W. T. Grant, Inc., the sum of $20 per month until payment of the $500 with interest at the rate of 6% on the unpaid balance, plus the costs of execution to date, is completed. If the Holmes fall into default in this payment, the respondent may move for leave to resume execution.
Settle judgment on notice.