Victor J. Orgera, J.
Plaintiff has moved to reargue a prior motion to confirm the Referee’s report in this partition action. The court did not confirm the report but referred it back to the Referee for modification.
In his report the Éeferee summarized the plaintiff’s testimony as follows:
"She married william r. hamm on September 23, 1954, and on November 2, 1962, as tenants by the entirety they purchased the real property which is the subject matter of this action. The property was purchased with the joint earnings of the plaintiff and defendant hamm subject to an existing mort *684 gage held by the dime savings bank of new york. On August 30, 1965, plaintiff obtained a Suffolk County Family Court Order requiring william r. hamm to support her and the four (4) children by the payment of one hundred forty ($140) dollars every two (2) weeks commencing September 10, 1965, a certified copy of which is annexed hereto and marked Plaintiff’s Exhibit '6’. After making sporadic payments william r. hamm was incarcerated from August 8, 1966, until some time in 1971. On May 1, 1972, plaintiff obtained a judgment of divorce from defendant william r. hamm, a certified copy of which judgment is annexed hereto and marked plaintiff’s Exhibit '5’. On December 6, 1972, Family Court amended its order of support fixing arrears at one thousand seven hundred twenty ($1,720) dollars and reducing support to twenty ($20) dollars per week, retroactive to June 12, 1972, for five (5) children, a certified copy of which is annexed hereto and marked plaintiff’s Exhibit '8’. After about a year and a half, william r. hamm was again incarcerated and is presently in the State Prison at Stormville, New York. He has contributed approximately one hundred sixty ($160) dollars to the support of his children since the Amended Family Court Order.
"The plaintiff also testified that the defendant william r. hamm is indebted to her for payment of his attorney’s fees of approximately one thousand ($1,000) dollars, and his Veterans Administration Life Insurance premiums of forty-six and 20Aoo ($46.20) dollars. She further asserts that she has expended approximately nine hundred ($900) dollars on maintenance and repair of the real property and that she has made all mortgage and tax payments from August 8, 1966, until October 5, 1974, when she vacated the premises and rented them to a tenant who makes monthly payments to plaintiff’s attorney who in turn pays the monthly mortgage payment and holds the balance in escrow. A copy of the ledger of the dime savings bank showing mortgage payments made by August 8, 1966, to March 2, 1973, amounting to thirteen thousand thirty-six ($13,036) dollars was entered in evidence as plaintiff’s Exhibit '11-A’.”
On the motion to confirm this court found that' on these facts the Referee erred in concluding that plaintiff was entitled to reimbursement for one half of the amounts she paid for mortgage, taxes, repairs and improvements on the marital premises prior to the parties’ divorce.
*685 In her supporting affidavits on this motion to reargue, plaintiff claims that: "This court disallowed those charges against Hamm’s share, on the assumption that they were intended by me as a gift to Hamm, founded upon the love and affection then inherent in our marriage.” She contends that the mortgage payments she made from about August, 1966, to the time the parties were divorced in May, 1972, were not made out of love and affection, but, "were made for one reason only, that is, to preserve a roof over the heads of myself and my five children.”
On these additional facts, which plaintiff implies the court failed to perceive on the original motion, she requests this court to allow her credit for one half of the subject payments. In support of her position she refers to the cases of Sirianni v Sirianni (14 AD2d 432), College Point Sav. Bank v Tomlinson, 42 Misc 2d 1061) and Cagan v Cagan (56 Misc 2d 1045).
This court in its original decision did not base its ruling on a presumption of a gift "founded upon love and affection,” but rather on the settled rule of law that upon a sale of property held as tenants by the entirety, each cotenant is entitled to an equal share of the proceeds. Different rules pertain, of course, after the tenancy by the entirety is converted to a tenancy in common by divorce (Sterns v Stevans, 20 Misc 2d 417, 418, citing Secrist v Secrist, 284 App Div 331, affd without opn 308 NY 750; Weigert v Schlesinger, 150 App Div 765, affd without opn 210 NY 573; Hosford v Hosford, 273 App Div 659; Pisarek v Pisarek, 264 App Div 986; Shapiro v Shapiro, 208 App Div 325). Nothing in the facts of the case at bar or in the cases relied on by plaintiff, which cases were considered by the court in its earlier determination, lead this court to a different conclusion.
The court, for the purposes of this motion to reargue, will restate in more detail the principles implicit in its prior decision.
It is settled law that the taking of title in the name of husband and wife, unless expressly declared to be a joint tenancy or tenancy in common, creates a tenancy by the entirety (Armondi v Dunham, 221 App Div 679). This rule has now been enacted into the statute law of New York (EPTL 6-2.2, subd [b]). The unique characteristic of a tenancy by the entirety and which distinguishes it from all other holdings is that husband and wife each is seized of the whole and not any undivided portion of the estate (per tout et non per my) and *686 both and each own the entire estate (Matter of Reister v Town Bd. of Town of Fleming, 18 NY2d 92). It depends on the relationship of husband and wife and continues until death or divorce (Stelz v Shreck, 128 NY 263). This principle has its roots in the common law where a husband and wife were regarded in law as one (Wright v Saddler, 20 NY 320).
In Bertles v Nunan (92 NY 152, 157) the court stated: "This rule is based upon the unity of husband and wife, and is very ancient. It must have had its origin in the archaic period of our race, and it colored all the relations of husband and wife to each other, to the law and-to society.” And (p 165): "It is said that the reason upon which the common-law rule under consideration was based has ceased to exist, and hence that the rule should be held to disappear. It is impossible, now, to determine how the rule, in the remote past, obtained a footing, or upon what reason it was based, and hence it is impossible now to say that the reason, whatever it was, has entirely ceased to exist. There are many rules appertaining to the ownership of real property originating in the feudal ages, for the existence of which the reason does not now exist, or is not discernible, and yet, on that account, courts are not authorized to disregard them. They must remain until the legislature abrogates or changes them, like statutes founded upon no reason, or upon reasons that have ceased to operate.”
During the existence of the tenancy by the entirety there are no conditions which affect its nature; it does not depend upon the parties living together, on whether there is any love and affection between husband and wife or that each of the parties shall remain faithful to the obligations of the married state. "None of the authorities treats the estate as dependent upon any such condition, and however proper it might be to enact by legislative authority a condition of that nature, this court has not that power.” (Stelz v Shreck, 128 NY 263, 270, supra.)
The respective interests as tenants by the entirety being the same and equal during their joint lives as husband and wife each is entitled to an equal share of the real property when the tenancy by the entirety is severed by a divorce (Secrist v Secrist, 284 App Div 331, supra). Upon divorce the parties become tenants in common of the property (Hosford v Hosford, 273 App Div 659, supra). The relation of tenants in common, in equal shares, begins when that of husband and wife ceases and not before (Carpenter v Carpenter, 130 Misc *687 701; Yax v Yax, 125 Misc 851; Stelz v Shreck, supra). The divorce operates in the future, and has no retroactive effect.
Over the years as an explanation of the division into equal shares upon divorce, there developed a fiction that the law implies a gift on the part of the spouse who furnishes the consideration (Yax v Yax, supra), based on love and affection (Hosford v Hosford, supra). This court’s extensive research finds nothing in the nature of a tenancy by the entirety making it dependent upon any such presumptions. Whatever rights, benefits or detriments there may be in this estate, they flow from the nature of the estate based upon the unity of husband and wife, and not from extrinsic considerations. In law they are one; a payment by one is a payment by both and all contributions to the corpus by either, whether in the form of money or services, prior to the divorce, are merged into this legal unity. The presumption of a gift or some other intention does not help in defining the nature of the estate nor does it determine the rights of the spouses (Stelz v Shreck, supra).
In Sirianni v Sirianni (14 AD2d 432, 437 supra) the court states: "The question presented by the wife is primarily one of fact, and its answer must depend in each case on the circumstances under which the expenditures were made. Ordinarily, and in the absence of evidence to the contrary, it would be presumed that such payments, made by a husband, insofar as they were of benefit to his wife, were intended as gifts (cf. Hosford v Hosford, 273 App. Div. 659; Shapiro v Shapiro, 208 App. Div. 325; Yax v. Yax, 125 Misc. 851), or were made in the discharge of his marital obligations. The fact that the husband and wife were living apart or had ceased to have any affection for each other would not, standing alone, require a contrary conclusion.”
The referee in Sirianni had found that the premises were occupied by the parties as their marital residence until May 22, 1954, when the wife committed adultery; from May 22, 1954 until November 1, 1955, when the divorce decree became final, the wife was in sole possession and occupancy of the premises to the exclusion of the husband whom she had locked out; that there was no affection between them after May 22, 1954; that for the husband to obtain access would incite violence; and that the payments made by the husband were not made out of love and affection nor were they intended as gifts to her.
The court concluded (p 438) that: "the evidence adduced *688 completely negated any presumption which might otherwise have existed that the expenditures by the husband while he was excluded from the marital residence and prior to the final judgment of divorce were intended as gifts to the wife; and there is no evidence or claim that they were made in discharge of his marital obligations. Concededly, the husband was not a mere volunteer, since the payments which he made protected his own interest in the common property.”
Many of the cases cited in Sirianni (Hiles v Fisher, 144 NY 306; Niehaus v Niehaus, 141 App Div 251; Maekotter v Maekotter, 74 Misc 214; Martos v Martos, 206 Misc 860 and Goergen v Maar, 2 AD2d 276) dealt with tenants in common and the rules pertaining to tenants in common were applied with respect to the benefits or uses appropriated by one tenant in excess of their entitlement as a cotenant. Care must be taken to distinguish the cases accordingly and to differentiate between the parties’ unity of ownership of the real property itself and their rights to the uses, rents and profits. In Carpenter v Carpenter (130 Misc 701, 703, supra) the court stated the law as follows: "until the marriage bond was severed, they were tenants by the entirety of the corpus of the property and tenants in common of the use and rents; these mutual rights were in no way dependent upon the proportionate contributions by the respective grantees to the purchase price; if the wife had furnished the entire amount, she would have had no larger benefits from the purchase than her husband, and if she furnished none of it, she would have no less. (Hiles v. Fisher, 144 N.Y. 306; Grosser v. City of Rochester, 148 N.Y. 235; Weigert v. Schlesinger, 150 App. Div. 765, affd. 210 N.Y. 573; Shapiro v. Shapiro, 208 App. Div. 325; Matter of Klatzl, 216 N.Y. 83, 89.)”
This court interprets Sirianni as allowing the ousted tenant recovery for his share of the use and benefits of the property, enjoyed by the wife but denied to him by her act. For lack of any other yardstick, it measured his entitlement as one half of the payments he made while excluded from the premises.
This court does not interpret Sirianni as allowing recovery for contributions toward the corpus prior to the divorce. To do so would have given retroactive effect to the divorce.
In College Point Sav. Bank v Tomlinson (42 Misc 2d 1061, 1063, supra) the court, citing Sirianni, stated: "Payments by a wife under the same circumstances may also be considered as *689 a gift. The question in each case, is one of fact * * * The report of the Referee here does not contain any finding on this aspect of the case although he took extensive testimony in relation thereto.”
The matter was then referred back to the referee for an appropriate factual finding.
In Cagan v Cagan (56 Misc 2d 1045, supra) the court cites Sirianni and concludes that a tenant by the entirety who is in possession to the exclusion of the cotenant and who pays all the carrying charges is entitled to contribution from the ousted cotenant for the payments made. In addition, the court held that the ousted tenant was entitled to a setoff for the reasonable rental value of the use of the premises. This resulted in a standoff. This court does not agree with the holding in Cagan nor is it bound to follow the same. If the theory applied in Cagan had been the holding of Sirianni, then in Sirianni the court would have granted the excluded husband both a recovery for the use and benefits denied him and contribution from the wife for expenditures made by him. This they did not do.
In the instant case, the only facts adduced before the Referee relative to the point in issue are that the husband and wife were living apart and that she had made the payments. Even assuming that the Referee had found, or would find on a rehearing, that the plaintiff, at some point had ceased to have any affection for defendant, as she now contends, this "would not, standing alone, require a contrary conclusion.” (Sirianni v Sirianni, 14 AD2d 432, supra.)
Contrary to Sirianni, plaintiff here enjoyed the benefits of the marital residence and moreover, payments made by her were "to preserve a roof over the heads of myself and my five children.” Certainly, in view of defendant’s inability to support the children during the period of his incarceration, it was "in the discharge of [plaintiffs] marital obligation” to support the children (Domestic Relations Law, § 32, subd 3). So far as defendant may have also had an obligation to support, it must be pointed out that the Family Court has already fixed the amount of that obligation.
The motion to reargue is granted, and as granted the court adheres to its original decision.