In re Bernard PERSKY, Debtor.

In re Stuart PERSKY, Debtor.

COMMUNITY NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Plaintiff,

v.

Bernard PERSKY and Shirley Persky and Stuart Persky and Ronni Persky, Defendants.

Bankruptcy No. 185–51446–352.
Adv. Nos. 186–0066, 186–0067.

United States Bankruptcy Court, E.D. New York.

Sept. 2, 1987.

Avery J. Gross, Corash & Hollander, Staten Island, N.Y., for plaintiff.

Mannarino Bader & Bloom, P.C., New York City, for defendants.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

In each of the above adversary proceedings, the debtor and his non-debtor wife own property as tenants by the entireties which they jointly occupy as their marital residence. Community National Bank and Trust Company of New York ("CNB"), over objection of the spouses, seeks authorization pursuant to 11 U.S.C. § 363(h) to sell the combined interests of both co-owners of property.

This decision addresses some of the prequisites to such a sale.

## FACTS

Stuart Persky filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 2, 1985. Bernard Persky filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 11, 1985. On April 2, 1987 this court ordered that these cases be jointly administered.

The factual background of these cases are similar. Bernard and Shirley Persky own a one-family house in which they reside as tenants by the entirety, located at 86 Acacia Avenue, Staten Island, New York. Stuart and Ronnie Persky own a one-family house in which they reside as tenants by the entirety, located at 85 Littlefield Avenue, Staten Island, New York. Each of the houses is currently valued at $129,000. Neither of the debtor's spouses has filed a Title 11 petition.

The debtors claim their (New York) homestead exemption under CPLR § 5206 of $10,000 of the value of their interest above liens and encumbrances. Community National Bank and Trust Co. of New York is listed by each debtor as a disputed, unsecured creditor in the amount of $119,285. The trustee, Marilyn Frier, has noticed a trustee's sale of Bernard Persky and Stuart Persky's interests in their houses for the sum of $2,500 and $4,500 respectively. Community National Bank seeks to compel a sale of the interests of both spouses in each of the estates pursuant to 11 U.S.C. § 363(h).

As of January 31, 1987, the principal balance of the Bernard Persky mortgage was $31,550. One-half of the total equity in that house, net of the debtor's exemptions, was $38,725 as of January 31, 1987. The principal balance of the Stuart Persky mortgage was $42,500 as of January 31, 1987. One-half of the total equity of his house, net of debtor's exemption was $33,250 as of January 31, 1987. Each of the debtors is indebted to CNB in an amount in excess of one-half of the net equity in his home, exclusive of claimed exemptions. It is undisputed that a sale of the estates' undivided interests in the subject real properties would realize significantly less for the estates than would a sale free of the interests of the non-debtor spouses. It is also undisputed that the property is not used in the production, transmission, or distribution for the sale of electric energy or of natural and synthetic gas or heat, light or power.

## DISCUSSION

In these proceedings, the plaintiff is seeking to have this court authorize a sale of both the debtors' interest in the subject property as well as their spouses' interest in the property, despite the fact that only the debtors are indebted to the bank. The Bankruptcy Code in 11 U.S.C. § 363(h) authorizes such a sale as long as the following four conditions are met:

1. [P]artition in kind of such property among the estate and such co-owners is impracticable;

2. [S]ale of the estate's undivided interest in such property would realize significantly less for the estate than the sale of such property free of the interests of such co-owners;

3. [T]he benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners, and

4. Such property is not used in the production, transmission or distribution,

for sale, of electric energy or of natural or synthetic gas for heat, light, or power. 11 U.S.C. § 363(h).

Before considering the facts presented in these proceedings against the criteria of § 363(h), it is necessary to consider the extent to which 11 U.S.C. § 522(b)(2)(B) may provide an exemption in entireties property, since this section enables a debtor to exempt:

> [a]ny interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.*

As a prerequisite to such a discussion, this court must first determine whether in New York the rights afforded one individual spouse vis-a-vis his or her judgment creditor rise to the level of rendering an entireties interest in a marital residence "exempt from process."

*Is any part of debtors' interest in their entirety property "exempt from process" under New York law?*

■ In New York State, a tenancy by the entirety can be created only by conveyance of real property to two people who are already husband and wife. *See Armondi v. Dunham,* 221 App.Div. 679, 225 N.Y.S. 87 (3rd Dept.1927), *aff'd w/o op.,* 248 N.Y. 603, 162 N.E. 542 (1928). Each of the tenants by the entireties has the following three distinct rights:

1. The right to possession of the property. *Matter of Goodrich v. Village of Otego,* 216 N.Y. 112, 110 N.E. 162 (1915).

2. The right to one-half of rents and property, if any, *Neilitz v. Neilitz,* 307 N.Y. 882, 122 N.E.2d 924 (1954).

3. The right to absolute ownership should the party asserting that right survive the other co-tenant. (hereinafter referred to as the right of survivorship).

*Matter of Goodrich v. Village of Otego,* 216 N.Y. 112, 110 N.E. 162 (1915).

Since a judgment creditor is given a lien on the judgment debtor's real property located in the county where the judgment is docketed, a judgment creditor of only one tenant by the entirety has a lien only upon that debtor's entirety interest. This interest may be executed upon and sold. *See Finnegan v. Humes,* 163 Misc. 840, 298 N.Y.Supp. 50, *mod.* 252 A.D. 385, 299 N.Y.S. 501, *affd.* 277 N.Y. 682, 14 N.E.2d 389 (N.Y.1938). The purchaser of that interest steps into the shoes of the judgment debtor-tenant and acquires a legal right to share possession of the premises with the non-debtor spouse subject to the latter's right of survivorship. *See* 252 A.D. at 387–88, 299 N.Y.S. 501. The purchaser has the right to one-half of the rent and profits, if any, the right to occupy the premises during the life of the spouse, and should the non-debtor spouse predecease the debtor spouse, the right to gain sole title to the entirety property. However, should the debtor spouse predecease the non-debtor spouse the purchaser's interest expires. *See Lawriw v. City of Rochester,* 14 A.D.2d 13, 217 N.Y.S.2d 113 (4th Dept. 1961), *aff'd, w/o op.,* 11 N.Y.2d 759, 226 N.Y.S.2d 695, 181 N.E.2d 631 (1962).

The purchaser therefore acquires a *legal* right to share occupancy of the premises with the non-debtor spouse during the married lifetime of both spouses. Since the non-debtor spouse's right to possession includes the right to entertain friends and shelter immediate family, the purchaser can oust neither the debtor nor the non-debtor spouse. The purchaser's legal right to possession is largely a right without a remedy, at least with regard to a residence whose occupancy is shared by both spouses. Mindful of the practical consequences of the enforcement of such a right, N.Y. Civil Practice Law and Rules § 5240 (1962)

---

* It is noted that no exemption has been claimed by either debtor for the entireties interest which is the subject of this discussion. However, in view of Bankruptcy Rule 1009 and the debtors' indicated intention in their Memorandum of Law to take advantage of such exemption to the extent that it may be available, this court will proceed herein as if the exemption had been claimed.

(hereinafter referred to as CPLR § 5240) states:

> [t]he court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.

Section 5240 was enacted to prevent " 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.' " *Moskin v. Midland Bank & Trust Co.*, 96 Misc.2d 600, 409 N.Y.S.2d 327 (Sup.Ct.N.Y. Co.1978) (quoting from the Third Preliminary Report of Advisory Committee on Practice and Procedure, p. 314 (1959)). Section 5240 has been broadly construed to permit " 'harmonizing the judgment debtor's interest in avoiding irreparable family harm resulting from execution ... with the legitimate interest of a creditor in securing payment of a valid debt.' " *Comm'r. v. Chudnik*, 126 Misc.2d 968, 484 N.Y.S.2d 753 (Sup.Ct.Catt.Co.1984) (quoting *Holmes v. W.T. Grant*, 71 Misc.2d 486, 336 N.Y. S.2d 601 (Sup.Co.Nassau Ct.1972)). This section has been found to be "particularly appropriate to efforts by creditors to enforce money judgments against the undivided interests of a debtor in a tenant by the entirety where the decisional process has involved the balancing of the harm likely to result from an execution against the necessity of using that immediate means of attempted satisfaction." *Lynch v. Atlantic Helicopter, Inc.*, N.Y. Law Journal, Oct. 18, 1977, p. 13, col. 1. (Sup. Ct.Suffolk Co.).

In *Hammond v. Econo-Car of the North Shore, Inc.*, 71 Misc.2d 546, 336 N.Y.S.2d 493 (Sup.Ct.Nassau Co.1972), CPLR § 5240 was invoked to prevent a judgment creditor of the petitioner's husband from forcing a sale of the latter's interest in their one-family home which was occupied by the non-debtor wife and her three children; the debtor-husband was separated from the family. The court pointed out several factors which it viewed as justifying exercise of the court's discretion under CPLR § 5240 in restraining the judgment-creditor from executing upon the husband's interest in the realty until the house became vacant, was sold, or the wife predeceased husband, or at some other time where the creditor would be able to show that a sufficient change of circumstances had occurred which would warrant further relief. The court stated that

> The creditor has failed to demonstrate a credible effort to collect from the judgment-debtor husband. Moreover, under the authorities, the sale of the husband's interest in the real property would convey a hybrid tenancy in common, with survivorship but no partition rights, to a third-party stranger who then could have some conceivable right to use immediately an undivided *one-half* share of the property.

> \* \* \* \* \* \*

> The threatened harm to Mrs. Hammond and the infants living with her is solely because of her husband's debt, an obligation which she and the children did not incur, are not legally bound to satisfy, and appear not to have benefitted from. *Id.* at 547, 336 N.Y.S.2d 493.

The court astutely observed that "as a practical matter, [the creditor's] real interest [was] in asserting its lien in event of an involuntary sale of the property, or in the husband's possibility of surviving the wife. The creditors' legitimate security interest is protected by its judgment lien.

> This court cannot visualize in this case any substantive value in immediate occupancy rights to any one outside the close family. Certainly, Econo-Car or any purchasing stranger at a Sheriff's sale, is not going to co-occupy with the family. And, what court would order a stranger into a home with Mrs. Hammond and her children? *Id.* at 548, 336 N.Y.S.2d 493.

Since the court found that the creditors had access to the debtor's non-exempt assets and wages and additionally had "a long-term lien against the husband's one-half share of the property", it held that its interest was adequately protected. Accordingly, the court restrained the creditor from executing upon the husband's interest

in the real property. *Id. See also Seyfarth v. Bi-County Electric Corp.*, 73 Misc.2d 363, 341 N.Y.S.2d 533 (Sup.Ct.Nassau Co.1973); *Gilchrist v. Commercial Credit Corp.*, 66 Misc.2d 791, 322 N.Y.S.2d 200 (Sup.Ct.Nassau Co.1971) where the courts, confronted with the facts fairly analogous to those in *Hammond*, held that CPLR § 5240 is authority for restraining a judgment-creditor of one spouse from executing upon the debtor spouse's interest in entirety property until the house either becomes vacant, is sold, the wife predeceases the husband, or where there is some other significant change of circumstances, since the judgment-creditor's interest was adequately protected by its lien on the realty.

The New York State Court of Appeals in *Guardian Loan Co. Inc. v. Early*, 47 N.Y.2d 515, 392 N.E.2d 1240, 419 N.Y.S.2d 56 (1979) had to determine whether CPLR § 5240 could be utilized to set aside a lawfully consumated sheriff's sale of realty which served as a family's principal residence and was owned by both spouses as tenants by the entirety. In its decision, the court recognized that a judicial sale of a judgment debtor's residence is a tragic event and that "CPLR § 5240 is perhaps the most practical method to protect judgment debtors from the often harsh results of lawful enforcement procedures." *Id.* at 519, 392 N.E.2d 1240, 419 N.Y.S.2d 56. However, the court decided that CPLR § 5240 would have "no application after a Sheriff's sale has been carried out and the deed delivered to the purchaser, at which time the use of the enforcement procedure will have been completed ..." *Id.* at 520, 392 N.E.2d 1240, 419 N.Y.S.2d 56. It was reasoned that to allow CPLR § 5240 to set aside an already completed execution sale "would be tantamount to a judicial resurrection of the concept of equity of redemption—a remedy purposefully deleted from article 52 by the Legislature and one which we have no right to invoke." *Id.* The strong implication is that had the Sheriff's sale not already been completed, the Court of Appeals probably would have condoned the use of CPLR § 5240 to restrain the sale of the judgment-debtor's one-half interest in this entirety property.

CPLR § 5240 therefore renders a judgment debtor's possessory interest in the entireties property "exempt from process" within the meaning of 11 U.S.C. § 522(b)(2)(B) so long as (a) the non-debtor spouse is occupying the home as a principal marital residence and (b) the harm likely to result from immediate execution outweighs the benefit to the creditor. *See Lynch v. Atlantic Helicopter Inc.*, N.Y. Law Journal, Oct. 18, 1977, p. 13, col. 1 (Sup.Ct.Suffolk Co.). This court views CPLR § 5240 as providing the debtor with a *de facto*, if not *de jure*, exemption of his possessory interest in his marital residence if it is owned as a tenancy by the entirety. It would appear, then, that while a judgment creditor's right to a lien upon the debtor spouse's real property interests is absolute, the right to enforce that lien by execution and sale is discretionary, particularly where the possessory rights of the non-debtor spouse and of non-spouse family members may be affected.

Both Persky families are occupying the entirety properties as their principal residences. Additionally, since the bank continues to have a lien on the debtor-spouses survivorship interest in the properties, the harm to the families that would result from an immediate sale of the property outweighs the bank's need for utilizing this draconian means of satisfaction. This court therefore speculates that were the debtors' interests in jeopardy of an execution sale, application of CPLR § 5240 by the New York courts would provide a *de facto*, if not a *de jure*, exemption. Since the debtors' possessory interests are therefore beyond the reach of the bank by operation of CPLR § 5240, such interests are "exempt from process" within the purview of § 522(b)(2)(B). All that remains in the debtors' estate are their respective rights of survivorship.

*How an application of CPLR § 5240 affects a § 363(h) sale*

Professor Alan N. Resnick and Ms. Wendy Finkel have concluded that:

[i]n view of state law [construing CPLR § 5240 and the cases interpreting that section] and § 522(b)(2)(B) [sic] of the

Bankruptcy Code, there are several reasons why courts should not permit trustees to sell family homes held as tenancies by the entirety in New York free of a spouse's interest. First, ... the debtor's interest remaining in the estate after the operation of Section 522(b)(2)(B) should be a very limited one which extends only to the right of survivorship in the absence of rents.

Based upon such a limited right, the drastic remedy of removing a family from their home should not be available. Second, since sales proceeds are to be divided among the estate and the non-bankrupt spouse according to their respective interests, the estate should not receive more than the value of the right of survivorship less the debtor's $10,000 homestead exemption. This amount could be realized by selling the right of survivorship alone without the necessity of ousting the non-debtor spouse. Moreover, in the usual case, the detriment suffered by a family which must relocate at current prices and mortgage rates, and with funds received upon a forced sale of their present home, should outweigh any benefit to the estate which will not reap more than the value of the survivorship interest. Resnick and Finkel, *Tenant by the Entirety in Liquidation under the Bankruptcy Code: When a House may not be a Home,* Commercial Law Journal, Aug/Sept 1981 at 286, 288–89.

Their reasoning was based largely upon *Waldschmidt v. Shaw (In Re Shaw),* 5 B.R. 107 (Bkrtcy.M.D.Tenn.1980) which held that a trustee could not sell a residence owned by the debtor and her husband as tenants by the entirety.

In *Shaw,* the trustee for the estate of one spouse filed a complaint under § 363(h) seeking to sell the family's principal residence which was owned by both spouses as tenants by the entirety. *Id.* 108–09. The court began its analysis reiterating the rule earlier enunciated in the case of *In re Ford,* 3 B.R. 559 (Bkrtcy.D.Md.1980), *aff'd Greenblatt v. Ford,* 777 F.2d 921 (4th Cir. 1985), which recognized that the entire interest of the bankrupt's spouse in entirety property, including the right to possession, initially becomes property of the estate upon filing. However, the debtor spouse's possessory interest in the entirety property passes out of the estate as exempt property pursuant to § 522(b)(2)(B) to the extent that it is immune from such execution under applicable non-bankruptcy law. *Shaw,* 5 B.R. at 109 (citing *In Re Ford,* 3 B.R. 559 (Bkrtcy.D.Md.1980)). The *Shaw* court, relying on *Robinson v. Trousdale County,* 516 S.W.2d 626 (Tenn.1974), a significant opinion on the doctrine of tenancy by the entirety in Tennessee, concluded that under Tennessee law creditors of one spouse can have the right to levy only on that spouse's survivorship interest. "Because the right of survivorship is not immune to execution, it remains in the estate after the debtor's interest has been exempted pursuant to § 522(b)(2)(B)." *Shaw,* 5 B.R. at 110. However, the debtor spouse's *possessory interest* in entirety property does not stay within the estate but is exempted from process pursuant to § 522(b)(2)(B). *See id.* at 109. The *Shaw* court went on to conclude that the right of survivorship is not a sufficient interest in entirety property to justify a trustee's sale of the entire property pursuant to § 363(h). *Id.* at 110.

In Tennessee one spouse's right of survivorship is not an undivided interest in entirety property as specifically required by § 363(h)(2) but rather one that is separate and alienable as such. It is for this reason that it remains in the estate after the § 522(b)(2)(B) exemption and it is for this reason that it does not give the trustee the right to sell the entire property pursuant to § 363(h). The Congress did not intend to give a trustee for the estate of one spouse the rather drastic authority to sell the entire property unless the entire interest of the debtor spouse as tenant by the entirety is included in the estate. *Id.*

Subsequent to the time the *Shaw* decision was rendered, courts in Tennessee have followed suit and likewise held that a trustee is not entitled to sell land owned by a Chapter 7 debtor and his non-debtor spouse as tenants by the entirety under 11

U.S.C. § 363(h) because the debtor's right to the use, possession and income from the entirety property passed out of the estate pursuant to 11 U.S.C. § 522(b)(2)(B). *See e.g., Ray v. Dawson,* 14 B.R. 822 (E.D. Tenn.1981) (holding that because in Tennessee property held by the entirety is exempt from process pursuant to § 522(b)(2)(B), two parcels of land held by debtor and his non-debtor wife as tenants by the entirety could not be sold by trustee); *Forbes v. Hankins (In re Hankins),* 53 B.R. 18 (Bkrtcy.M.D.Tenn.1985) (holding that the trustee's actions seeking to sell an entire four parcels of property pursuant to § 363(h) was not warranted since the survivorship interest, which was the only interest amenable to sale could be sold separately); *In re Walls,* 45 B.R. 145 (Bkrtcy.E. D.Tenn.1984) (similar holding). Also in *Citizens & Southern Nat. Bank v. Auer,* 640 F.2d 837 (6th Cir.1986) the Court of Appeals for the Sixth Circuit observed that "a judgment creditor can levy on the interests of the debtor, but the creditor's only right is to succeed to the estate in the event the debtor outlives the other tenant by the entirety." *Id.* at 834.

There are also several reported decisions from other states in which a court has been called upon to determine whether, under applicable state law, property held by the entireties is immune from process pursuant to 11 U.S.C. § 522(b)(2)(B) where the debt in question is owed by only one spouse.

In *In Re Furkes,* 65 B.R. 232 (D.R.I. 1986), a debtor sought to exempt from the bankruptcy estate property he and his wife held as tenants by the entirety. The bankruptcy court had denied the exemption and the debtor appealed. The district court began its analysis by pointing out that under Rhode Island law a tenancy by the entirety is subject to attachment, but not to levy and sale.

> In effect, such a tenancy is insulated from satisfaction of a creditor's judgment unless and until the debtor spouse outlives the non-debtor spouse.... The attachment may stand, but immediate levy may not go forward. If and when [debtor] has survived his wife "creditor[s] may enforce [the] attachment pur-

suant to an active, unsatisfied judgment, thus compelling the entirety property to be sold on execution." *Id.* at 235 (quoting from *Cull v. Vadnais,* 122 R.I. 249, 406 A.2d 1241 (1979).

If the debtor were to predecease the non-debtor's spouse then levy upon attachment would be forever barred. *Furkes,* 65 B.R. at 235. Thus, under Rhode Island common law, the creditor is entitled to the right of survivorship but not a possessory interest in the entirety property.

In *In Re Thomas,* 14 B.R. 423 (Bkrtcy.N. D.Ohio 1981), the court was called upon to determine whether under Ohio law property held by the entireties was exempt or immune from process by a creditor whose debt was owed by only spouse. The court went even further and found that under applicable Ohio law "a creditor of an individual debtor [should] not be permitted to attach, levy or execute upon property held by the entireties. Accordingly, the real property is exempt from process under state law and 11 U.S.C. Section 522(b)(2)(B) applies so as to make this property exempt from the bankruptcy estate." *Id.* at 428. A bankruptcy court in Pennsylvania similarly concluded that entireties property held by a debtor spouse in bankruptcy is *completely exempt* and therefore immune from process. *In Re Barsati,* 7 B.R. 205 (Bkrtcy.W.D.Pa.1980). In these cases, the judgment creditors were unable to gain even a survivorship interest in the entire property. Similarly, in *Hadley v. Koehler (In re Koehler),* 6 B.R. 203 (Bkrtcy.N.D. Fla.1980) the court, in dicta, stated that a creditor of a debtor spouse is unable to unilaterally subject entirety property to any kind of process in order to satisfy its claim under Florida law. *Id.* at 206.

Professor Resnick's article, written before the *Furkes* and *Thomas* decisions were issued, urges bankruptcy courts courts in New York to follow the analysis used in the Tennessee cases and hold that a § 363(h) sale of entirety property is not proper since the debtor's possessory interest is exempt from process pursuant to

**664**

New York law, specifically CPLR § 5240 and cases interpreting that section.

There have been several bankruptcy court decisions in New York which have considered this issue. In each of the cases, the court considered whether any interest of the debtor in entirety property was exempt from the estate under applicable nonbankruptcy law, thus triggering the operation of § 522(b)(2)(B). None of these courts utilized Professor Resnick's reasoning.

In *In Re Levenhar*, 24 B.R. 331 (Bkrtcy. E.D.N.Y.1983) Judge Goetz observed that "[i]n New York ... the interest of a tenant by the entirety is subject to the lien of a judgment and may be sold under execution. Therefore ... § 522(b)(2)(B) has no application to the estate by an entirety held by a New York resident and his interest remains property of the estate." *Id.* at 335. Judge Goetz did not address the nonbankruptcy applicability of CPLR § 5240 as providing a *de facto* exemption by preventing the judgment creditor from reaching the debtor's possessory interest.

In *Kirschenbaum v. Feola (In Re Feola)*, 22 B.R. 81 (Bkrtcy.E.D.N.Y.1982), Judge Radoyevich recognized the existence of CPLR § 5240 but in conclusory fashion dismissed its applicability by opining that since § 522(b)(2)(B) is antagonistic to the purpose of § 363(h), its application would eliminate the court's discretionary power to order a joint sale. *Id.* at 85. Therefore, Judge Radoyevich concluded that § 522(b)(2)(B) is "a nullity in New York and therefore does not conflict with § 363(h)." *Id.*

In *In Re Weiss*, 4 B.R. 327 (Bkrtcy.S.D. N.Y.1980), Judge Schwartzberg stated that:

[t]he debtor's novel claim is that even though his tenancy may be subject to execution by his creditors, he nevertheless retains a property interest by his possession which is of value and which qualifies for the exemption under Code § 522(b)(2)(B), because it cannot be reached by his creditors. This proposition is unsupportable for the reason that his occupancy arises out of his marriage

certificate and not his deed. A debtor whose interest in a tenancy by the entirety which is either sold under execution or passes to his trustee in bankruptcy has no residual property interest in the premises that can be described as "exempt from process under applicable nonbankruptcy law" within the meaning of Code § 522(b)(2)(B). At most, he is a guest or invitee of his wife with whom he lives. *Id.* at 330–31.

Judge Schwartzberg then concluded that the debtor has no interest in the property which may be exempt from the estate. *See id.* at 331.

Professor Resnick's article observed that in construing the effect of § 522(b)(2)(B) the *Weiss* court erroneously

"focused on what the debtor may keep. Since the debtor does not keep a right to possess the home as a matter of property law, the court held that the possessory interest is not 'exempt from process.' "

Professor Resnick pointed out that Instead, the court should have focused on what the creditor may not reach under state law. Because a creditor cannot take the debtor's possessory right because under CPLR Section 5240, the right to possession should be considered "exempt from process." Accordingly, the only components of the interest in the home which should remain in the estate after applying Section 522(b)(2)(B) are the debtor's right of survivorship and interest in rents and profits. Resnick & Finkel *A Tenant by the Entirety in Liquidation Under the Bankruptcy Code: When a House May Not Be a Home* 286–290.

In accordance with the Resnick article, this court holds that the immunity from process afforded the debtor spouse's possessory interest in the family home triggers § 522(b)(2)(B), and that upon a proper claim of exemption only rights of survivorship should remain in the estates.

■ Therefore, we must determine whether the drastic remedy of sale of a family home under § 363(h) should be authorized where the creditor has an enforce-

able lien only upon the debtors' rights of survivorship. In order to reach that determination, we must inquire (a) whether "detriment" in § 363(h) means purely economic detriment, and (b) whether a survivorship interest by itself is sufficient to warrant an application of § 363(h).

Although there are several reported cases which make assumptions or holdings on whether "detriment" as used in § 363(h) is limited to economic detriment or whether it should be given wider application, there are no reported cases which discuss the question in any depth. Several bankruptcy courts have recognized that Congress envisioned the bankruptcy court weighing the possibility of any non-financial detriment (i.e., emotional and physical) that could have repercussions from a forced sale, in addition to financial detriments, when analyzing § 363(h). Judge Goetz in *In Re Levenhar*, 24 B.R. 331 (Bkrtcy.E.D.N.Y.1982) and Judge Gabriel in *In Re Addario*, 53 B.R. 335 (Bkrtcy.D.Mass.1985) stated that in determining whether to allow a § 363(h) sale, the court must consider not only the economic detriment which the co-owner would face in being evicted but also any emotional detriment that would follow such a forced sale.

The legislative history to 11 U.S.C. § 363(h), indicates that a court should determine whether the benefit to the estate of the sale outweighs *any* detriment to the co-owners of the property, House Report No. 95–595, 95th Cong., 1st Sess. 346 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 56–57 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, thus implying that Congress wanted the bankruptcy courts to construe broadly the word detriment and to take into account not only economic detriment but also the psychological, emotional and even physical detriment that could result from a § 363(h) sale. "Detriment" therefore means not only economic hardship, but also any loss, harm, injury or prejudice proximately following from an involuntary displacement.

> [I]n the usual case, the detriment suffered by a family which must relocate at current prices and mortgage rates, and with funds received upon a forced sale of their present home, should outweigh any benefit to the estate which will not reap more than the value of the survivorship interest. Resnick & Finkel, *A Tenant by the Entirety in Liquidation Under the Bankruptcy Code: When a House May Not Be a Home*, Commercial Law Journal Aug/Sept 1981 286–289.

To put it another way, non-debtors' spouse's right to a portion of the sales price will rarely be sufficient to purchase comparable quarters for her and her family. A survivorship interest by itself will not provide a roof to protect the non-debtor's spouse and her family from today's snow and rain. The effect of a § 363(h) sale would be to deprive the non-debtor spouse of two interests, (a) the possessory and (b) the survivorship, while compensating her only for the latter.

In a study published at about the time that the Bankruptcy Code became effective two authors analyzed psychological hazards experienced by one in the process of relocating a residence. Stokals and Shumaker, *The Psychological Context of Residential Mobility and Well-Being*, 38, No. 3 Journal of Social Issues, 149. The authors cited previous studies showing that stressful life events, including relocation, indicate that undesirable events are significantly related to health impairment. *Id.* at 152.

> [R]esidential relocation has been viewed as a relatively short-term and acute life event which imposes considerable strains on the individual at the time of moving. These strains often lead to psychological and physical disorders during and following the move, although the negative health impacts of relocation are reduced due to the extent that circumstances surrounding the move ... are predictable and controllable.

An article in *The Urban Condition* sets forth feelings of persons forced to move from their homes in the West End of Boston due to urban renewal projects.

> There are wide patterns in the success of post-relocation adjustment and considerable variability in the depth and quality of the loss experience. But for the majority

it seems quite precise to speak of their reactions as expressions of grief. These are manifest in the feelings of painful loss, continued longing, the general depressive tone frequent symptoms of psychological or social or somatic distress, the active work reserved in adapting to the altered situation, the sense of helplessness, occasional expressions of both direct and displaced anger, and tendencies to idealize the lost place.

In their most extreme, these reactions of grief are intense, deeply felt and, at times, overwhelming. In response to a series of questions covering the feelings of sadness and depression which people experienced after moving, many replies were unambiguous: "I felt as though I had lost everything," "I felt like my heart was taken out of me," "I felt like taking the gaspipe," "I lost all the friends I knew," "I always felt I had to go home to the West End and even now I feel like going when I pass by," "Something of me went with the West End," "I felt cheated," "What's the use of thinking about it," "I threw up a lot," "I had a nervous breakdown." Certainly, some people were overjoyed with the change and many felt no sense of loss. Among 250 women, however, 26 per cent report that they still feel sad or depressed two years later, and another 20 per cent report a long period (six months to two years) of sadness or depression. Altogether, therefore, at least 46 per cent give evidence of a fairly severe grief reaction or worse. And among 316 men, the data show only a slightly smaller percentage (38 per cent) with long-term grief reactions. The true proportion of depressive reactions is undoubtedly higher since many women and men who report no feelings of sadness or depression indicate clearly depressive responses to other questions.

In answer to another question, "How did you feel when you saw or heard that the building you had lived in was torn down?" a similar finding emerges. As in the previous instance, the responses are often quite extreme and most frequently quite pathetic. They range from those who replied: "I was glad because building had rats," to moderate responses such as "the building was bad but I felt sorry," and "I didn't want to see it go," to the most frequent group comprising such reactions as "it was like a piece being taken from me," "I felt terrible", "I used to stare at the spot where the building stood," "I was sick to my stomach." This question in particular, by its evocative quality, seemed to stir up sad memories even among many people who denied any feeling of sadness or depressing. The difference from the previous result is indicated by the fact that 54 per cent of the women and 46 per cent of the men report severely depressed or disturbed reactions; 19 per cent of the women and about 31 per cent of the men report satisfaction or indifference; and 27 per cent of the women and 23 per cent of the men report moderately depressed or ambivalent feelings. Thus it is clear that, for the majority of those who were displaced from the West End, leaving their residential area involved a moderate or extreme sense of loss and an accompanying affective reaction of grief. *The Urban Condition* 151–152 (C.L. Duhl, M.D., ed. 1969).

The conclusion is inescapable that today's emotional difficulties are tomorrow's economic predicaments. To those who would have us hold that we need consider only non-economic factors, we would respond that today's social and psychological detriment is the long term economic detriment not only to the family of the debtor but also to the community of which the creditor body is but one small segment.

In drafting § 363, Congress sought to soften the economic detriment that a forced sale of the family residence would have on the co-owner by giving the co-owner the right of first refusal and allowing the co-owner to receive the proceeds of such sale minus the costs and expenses, not including any compensation of the trustee, of such sale, according to the interest of such spouse or co-owners, and of the estate. 11 U.S.C. § 363(i) & (j). Nevertheless, in § 363(h)(3), Congress specifically required

the court to balance the detriment to the co-owners and the benefits to the estate before authorizing such a sale. It follows that Congress must have meant something more than mere economic detriment when it enacted this part of the statute require a balancing test. To say that the word "detriment" in § 363(h)(3) means purely economic detriment in light of the economic safeguards given the non-debtor's spouse in § 363(i) and (j) would render the balancing test in § 363(h)(3) mere surplusage.

In weighing, as we therefore must, the emotional and possible physical harm that may result from a forced displacement by a § 363(h) sale, this court finds that the benefit to the estate of a sale of the non-debtor's spouse's right of survivorship in both cases is outweighed by the detriment to a family forced to move from its long-term home.

■ Even were all of the foregoing arguments to be rejected, however, there is still another reason for denying plaintiff's request. Section 363(h) authorizes the sale of property "in which the debtor had, at the time of the commencement of the case, *an undivided interest* ..." [Emphasis supplied.] In New York, as in most common law jurisdictions, the characteristic of a tenancy by the entirety is that husband and wife are each seized of whole and not of any undivided portion of the estate. *Doyle v. Hamm*, 84 Misc.2d 683; 377 N.Y.S.2d 349; *Leis v. Shaughnessy*, 26 Misc.2d 536, 209 N.Y.S.2d 648. As was stated by the New York Court of Appeals:

> Once we consider the nature of the tenancy by the entirety—a tenancy whose salient characteristic is the unique relationship between a husband and his wife—each of whom is seized of the whole and not of any undivided portion of the estate, it can be said that both and each own the entire fee. *Reister v. Town Board of Town of Fleming*, 18 N.Y.2d 92; 271 N.Y.S.2d 965; 281 N.E.2d 681 (1966).

It is apparent therefore that since the debtor's interest in the subject property as a tenant by the entireties is not an undivided interest therein, that at least in the State of New York entireties interests are not subject to § 363(h) sales.

In view of the foregoing, it is not necessary to address the question of whether the plaintiff herein as creditor has standing to compel the trustee to invoke § 363(h) powers which the statute says she may invoke.

Community National Bank and Trust Company's request for an order directing the sale of both debtor's and spouse's interest in the respective family residences is denied, conditioned only upon the debtor's amendment of schedules so as to claim their possessory interests in their marital residences exempt pursuant to CPLR § 5240 within thirty (30) days hereof.

SO ORDERED.

