### Matter of William Harold SPAIN, Debtor.

John P. WHITTINGTON, Trustee of the Estate of William H. Spain, Plaintiff,

v.

GILBRALTER SAVINGS & LOAN ASSOCIATION, North Shelby County Fire District, Tax Collector of Shelby County, and Mary P. Spain, Defendants.

Bankruptcy No. 79–3543.
Adv. No. 83–1122.

United States Bankruptcy Court,
N.D. Alabama, S.D.

April 14, 1988.

Milton Garrett, Birmingham, Ala., for debtor.

J.N. Holt, Birmingham, Ala., for trustee.

Andre Toffel, Daniel Wainscott, Birmingham, Ala., for Mrs. Spain.

John P. Whittington, Birmingham, Ala., trustee.

## FINDINGS OF FACT AND OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

This is the third Opinion [1] written by this Court in this Adversary Proceeding, which has been pending since October 11, 1983, and the case is now being heard on the mandate of the Court of Appeals in the case of *John P. Whittington, Trustee v. Mary P. Spain, et al*, BK A.P. No. 83–1122, ruling that the debtor's wife had a destructible right of survivorship in a joint tenancy with her husband in their homestead.

This Court now rules that it has no jurisdiction to entertain or hear this Adversary Proceeding because Section 363(h) is unconstitutional by the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) by the Supreme Court of the United States.[2]

That Congress sought to create a bankruptcy court independent of the district courts and to invest it with the power to hear cases similar to the case proscribed by the *Northern Pipeline* case by the plurality of Judges of the United States Supreme Court is apparent.

The scheme of the drafters of the Bankruptcy Reform Act of 1978 was to place in a federal bankruptcy court the power to hear suits reserved to state courts, and this is not only recounted in detail by the Supreme Court in *Northern Pipeline*, but outlined by Professor Lawrence King in his treatise on Section 541 found in *4 Collier on Bankruptcy*, at 541–5 through 541–112 (15th ed. 1987), and his treatise on Section 363, as set out in *2 Collier on Bankruptcy*, at 363–5 through 363–42 (15th ed. 1987). Since these references are extensive, this Court does not attempt to set out in detail what is said in *Collier* or *Northern Pipeline*, but invites the perusal and study of these sources in depth. The Court adopts the context of them as part of the basis for its ruling in this matter.

It may be briefly said that to facilitate the sales process in the bankruptcy court and thereby attempt to vest in that court powers to sell other people's property in a rough-shod manner and to violate all constitutional limitations of due process and to invest in the court powers unheard of before in a federal bankruptcy court, the Congress enacted Section 363(f)(g) and (h) of the Bankruptcy Reform Act. To paraphrase the Court in *Northern Pipeline*, Congress just went too far. See *2 Collier on Bankruptcy*, beginning at 588.2 (14th ed. 1976).

All of this is part of history, and needless to say, cured by Congress by the Bankruptcy Amendments and Judgeship Act of 1984.[3]

The framers of the Bankruptcy Reform Act had as its avowed purpose to invest the trustee with power to "use, sell or lease ... property of the estate," as defined in Section 363(b) independent of any need for court actions or approval. It is readily apparent that if the trustee undertook to sell "free and clear of liens" or to sell the third party interest of an entity, that it could do so only by judicial sale by Order

---

1. See *Matter of Spain*, 55 B.R. 849 (Bkrtcy. 1985); the second Opinion in this Adversary Proceeding is due to be published shortly in the West Bankruptcy Reporter series. 83 B.R. 61 (Bkrtcy.N.D.Ala.1988).

2. In that case Mr. Justice Rehnquist, now Chief Justice, found the new Bankruptcy Court not to be an "adjunct" to the United States District

Court. It could be compared to a hornet's nest hung on a tree which enjoys the protection and shade of the tree, but does not share in its life-giving sap.

3. Pub L. 98–353, Title II, ¶ 121(a), July 10, 1984, 98 Stat. 345.

of the court. See Id.; see also *ABI Newsletter*, Vol 2, No. 2, Spring/Summer 1984, "Quo Vadis? An Echo from the Past." The Code was never clear how a transfer of title could be made from the debtor to the purchaser and satisfy state legislative requirements without a proper deed of conveyance. Since the trustee had no title, his deed was insufficient to pass title from the debtor to the purchaser without a court decree.

It was obvious to some thoughtful lawyers that problems would arise with title companies who did not wish to ensure the title to lands lacking constitutional requirements. Many articles were written on this subject and it was even suggested that the newly created bankruptcy court would punish title companies who hesitated to assume such risk.

This decision in the *Spain* case is likely to cause controversy and to affect titles to land purchased at bankruptcy sales in that period, whether confirmed by the court or not. Certainly, no real estate titles would be affected in cases commenced under the 1984 Amendments if the bankruptcy judge was careful to differentiate between core proceedings and related proceedings as defined in 28 U.S.C., Section 157. The latter can only be the product or result of an Article III Judge's action.

That the wife occupying the homestead with her husband can be a bona fide adverse claimant, and has been so recognized, is dealt with fully in *2 Collier on Bankruptcy*, beginning at 507 (14th ed. 1976).

That the possession by the wife, even though shared with the husband, does not in any way make her vulnerable to actions by a trustee in seeking to oust her from her home or render her possession, occupation and enjoyment of the home any more vulnerable than existed under state law or common law is well settled. See *2 Collier on Bankruptcy*, para. 23.06 at 507 (14th ed. 1976). She has every right to defend her possession and insist on due process of law by requiring the trustee to test his title against her right of possession in a possessory action, such as ejectment, actions in the nature of ejectment or suits to try title.

If a wife of a bankrupt holds property merely as his agent, and not under a *bona fide* claim of lien or ownership, her possession is that of the bankrupt, and she is not an adverse claimant; but if her possession and claim are in good faith, her claim of lien or title must be adjudicated in a plenary suit. *2 Collier on Bankruptcy*, para. 23.06 at 507 (14th ed. 1976). (Many cases cited)

Although there were no definitions of "core" proceedings in the original 1978 Reform Act, the concept of "summary" and "plenary" proceedings were well understood and Section 23(a) and (b) of the former Bankruptcy Act was well defined in many decisions. Confessedly, the United States District Court was the bankruptcy court and thereby an Article III Court under the 1898 Act, and referee jurisdiction was limited within constitutional bounds by Section 23. *Shumacher v. Beeler*, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1935); *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Williams v. Austrian*, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947); *Wright v. Union Central Life Insurance Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1938).

The definition and recognition of the requirements of a plenary proceeding was inherent in Federal Rules of Bankruptcy Procedure 701, now 7001. Please note that 363(f)(g) and (h) parallel, but are independent of suits by the Trustee under Sections 544, 545, 546, 547, et seq, which usually must be brought in a state court or the United States District Court.

Section 363(f) is replete with restrictions and limitations as is, also, section 363(h). That such restrictions affect district courts as well as bankruptcy judges is manifested in *2 Collier on Bankruptcy* as noted in the following cases, to-wit: *Shumacher v. Beeler*, supra, *Katchen v. Landy*, supra, *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, supra, *Williams v. Austrian*, supra, and *Wright v. Union Central Life Insurance Co.*, su-

pra. Also see *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) and cf. *In re L.T. Ruth Coal Co., Inc.*, 66 B.R. 753 (Bkrtcy E.D.Ky.1986).

In the event higher courts may find that a sale for division of a homestead in the possession of the wife with her debtor husband is not one of the types of state court or common law actions forbidden to bankruptcy judges by *Northern Pipeline*, and finds that jurisdiction is in this Court, then the Court denies the Complaint of the Trustee to sell the wife's interest in the following findings and conclusions:

### FINDING NUMBER 1

The homestead was properly claimed as exempt and was therefore exempt, and title thereto never passed to the Trustee; *Brock Candy Co. v. Elson*, 211 Ala. 244, 100 So. 94 (1924); See 11 U.S.C. Section 522(*l*):

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. Section 522(*l*).

The following rules of Alabama law are well settled:

> It is well settled by the decisions of this court that one joint owner of land may file a bill in equity for a sale of same for division when the same cannot be fairly partitioned in kind between the respective owners, notwithstanding the owners may be husband and wife. (Cite omitted) Such a bill, however, cannot be maintained by the husband against the wife, over her objection, when the land sought to be sold constitutes the homestead. (Cite omitted)

*Miles v. Miles*, 207 Ala. 57, 58, 91 So. 886, 887 (1921)

### FINDING NUMBER 2

■ The trustee succeeded only to the bankrupt debtor's interest, which the Court of Appeals has held to be an undivided one-half interest in a joint tenancy with a destructible right of survivorship. It is manifest that the trustee had a disputed title and acquired at best a disputed right of possession which he was compelled to litigate with the wife.

Fundamentally, the allowance of homestead exemption is in direct proportion to the value of the land and improvements. As explained in *Drake v. Drake*, 262 Ala. 609, 80 So.2d 268 (1955), the value of the property may be such that the exemptioners may be compelled in a proper proceeding to take a cash equivalent in lieu of homestead. See *Miles v. Miles*, 211 Ala. 26, 99 So. 187 (1924); see also Judge McFadden's Opinion in *Granite Equipment Leasing Corp. v. Smith's Pride Foods, Inc.*, 431 F.Supp. 490 (D.C.Ala. 1977); *Barber v. Beckett*, 251 Ala. 569, 39 So.2d 17 (1949); *Alside Supply Co. v. Meeks*, 380 So.2d 910 (Ala.1980).

■ The evidence admitted by the Court was to the effect that the Spain's residence on the date of bankruptcy had a market value of One Hundred Thousand and no/100 Dollars ($100,000.00). There was also evidence that the present-day value, despite all the improvements made by the Spain's of One Hundred Three Thousand and no/100 ($103,000.00) in the eight years of occupancy since that time, is now only One Hundred Seventeen Thousand and no/100 Dollars ($117,000.00). The Court rules that the only relevant value was that existing on the date of bankruptcy. The Court places the value of the property in 1979 at One Hundred Thousand and no/100 Dollars ($100,00.00) and the value of the mortgage encumbrances at Eighty Thousand and no/100 Dollars ($80,000.00). After deducting the homestead exemptions of the husband and wife of Fifteen Thousand and no/100 Dollars ($15,000.00),[4] this

---

**4.** This case was filed before Alabama limited by legislation the homestead exemption to $5,000.00 per spouse by Ala. Code (1975), Sections 6–10–2 and 6–10–11.

leaves a net equity of Five Thousand and no/100 Dollars ($5,000.00). The trustee's possible interest after encumbrances and exemptions was, and still is, Twenty-Five Hundred and no/100 Dollars ($2500.00).

## FINDING NUMBER 3

Since the trustee does not have a ready purchaser, and did not so produce one in 1979 at the time of bankruptcy, it is apparent that no possible dividend or return to creditors could be had because the cost of selling the property would wipe out creditor interest. This Court is not interested in selling property just to pay the trustee or his attorneys a fee, or a commission to a real estate agent.

The Court finds that the administrative cost of a sale would far exceed any equity available to the creditors and render a return to creditors of zero.

## FINDING NUMBER 4

■ Congress, in its wisdom, adopted the concept set out in section 363(h)(3), requiring a determination that "the benefit to the estate of a sale of such property free of the interest of co-owners outweighs the detriment, if any, to such co-owners ..." 11 U.S.C. Section 363(h)(3).

■ The Court finds that such a sale from a monetary standpoint would violate this prohibition, but finds further that the psychological and emotional damage to the family by the loss of the home is also a factor to be considered. Neither the debtor, William Harold Spain, nor the wife, Mary P. Spain, nor their teenage children, want to suffer the trauma of being torn from the home. In this connection we quote from the synopsis contained in headnote #2 in *In re Persky*, 78 B.R. 657 (Bkrtcy E.D.N.Y.1987), to-wit:

> Before it can authorize sale of property in which (the) estate holds only part interest, (the) court must first consider any "detriment" to (the) co-owner, including any psychological, emotional and even physical harm; term "detriment" is not limited to purely economic loss, but includes any loss, harm, inju-

ry or prejudice proximately resulting from the sale. Bankr. Code, 11 U.S. C.A., Section 363(h).

*In re Persky*, 78 B.R. at 657.

The Petition of the Trustee is DENIED AND DISMISSED.