In re Ronald R. TARRANT and Sandra J. Tarrant, Debtors.

Ronald R. TARRANT and Sandra J. Tarrant, Plaintiffs,

v.

SPENARD BUILDERS SUPPLY, INC., Defendant.

Bankruptcy No. 4–81–0025.

United States Bankruptcy Court, D. Alaska.

April 8, 1982.

Barry W. Jackson, Fairbanks, Alaska, for plaintiffs.

James D. DeWitt, Fairbanks, Alaska, for defendant.

## MEMORANDUM OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

This matter is before the court on a motion for summary judgment of Creditor Spenard Builders Supply, Inc. (Spenard) and on the Debtor's oral cross-motion for summary judgment. Chapter 7 Debtors Ronald R. Tarrant and Sandra J. Tarrant (Tarrants) seek, pursuant to § 522(f)(1) of the Bankruptcy Reform Act of 1978 (Code), 11 U.S.C. § 101 *et seq.*, to avoid the judicial lien held by Spenard on the residence of the Tarrants, more particularly described as Lot Five, Block Twelve, Beaver Subdivision, Fairbanks Recording District, Fourth Judicial District, State of Alaska. Ronald Tarrant has claimed a $19,000 exemption in the residence, pursuant to Alaska law, and the Tarrants argue that Spenard's lien would impair that exemption. Spenard argues that the Tarrants' complaint to avoid the lien was not timely filed, because not filed before the Tarrants were granted a discharge. The parties also disagree concerning the time at which the residence should be valued for purposes of exemption. Having considered the arguments of the parties, this Court finds that the Tarrants' complaint to avoid Spenard's lien was timely filed and that the value of the residence for

exemption purposes, and thus the extent to which Spenard's lien is avoided, are to be determined as of the date of the filing of the Tarrants' Chapter 7 petition.

### I. Factual Background

The Tarrants filed their joint Chapter 7 petition on August 1, 1980. On June 25, 1981, Ronald Tarrant claimed the exemptions to which he was entitled under Alaska law, including a $19,000 exemption in the family residence.[1] No objections to the claimed exemptions were filed. On July 10, 1981, the Tarrants were discharged pursuant to § 727 of the Code. The case has not yet been closed, as the estate is still being administered.

Spenard timely filed a proof of claim and alleges that it holds a secured claim in the amount of $10,030.26 plus interest. The basis for Spenard's claim is a Judgment of Confession entered by the District Court for the Fourth Judicial District of the State of Alaska against Ronald Tarrant. Spenard claims that this judgment became a lien on Ronald Tarrant's real property when the judgment was recorded on March 13, 1980.[2]

On August 20, 1981, after the order for discharge but during the administration of the estate, the Tarrants filed a complaint objecting to Spenard's secured claim and seeking to avoid the fixing of a lien on exempt property pursuant to § 522(f) of the Code.

As of the filing of the Tarrants' Chapter 7 petition on August 1, 1980, the residence had a fair market value of $59,000. It was

1. AS 09.35.090 reads, in pertinent part:

   *Residence exemption.* (a) The homestead of any family is, or the proceeds of the homestead are exempt from judicial sale for the satisfaction of any liability contracted or judgment on debt except as provided in this section. The homestead consists of the actual abode of and owned by the family or some member of the family. It shall not exceed $19,000 in value, in excess of mortgages, deeds of trust and liens of record, and not 160 acres in extent if located outside a town or city laid off into blocks or lots, or not exceed one-fourth of one acre if located in a town or city . . . .

2. AS 09.30.010 reads, in pertinent part:

   *Recording copy of judgment as lien.* A certified copy of the judgment or decree of a court of this state or a court of record of the United States upon which execution may issue, the enforcement of which has not been stayed, may be recorded with the recorder of a recording district. From the recording, the judgment or decree becomes a lien upon the real property of the defendant which is in the recording district, which is not exempt from execution, and which is owned by him at the time or acquired by him afterward but before the lien expires. . . . From the date of recording the judgment or decree, together with the order allowing issuance of execution, the judgment or decree becomes a lien in the manner provided in this section.

encumbered at the time by a first deed of trust to Mt. McKinley Mutual Savings Bank, on which $46,482.11 was owing, and by a second deed of trust to Alaska Statebank, on which $3,958.79 was owing. In addition, Plywood Supply, Inc. claimed a lien on the property by virtue of a judgment against Ronald Tarrant for $3,131.63 plus interest, recorded on January 21, 1980.

Subsequent to the filing of the Chapter 7 petition, the Tarrants tried to sell the residence, without success. Ronald Tarrant undertook to enhance the marketability of the property by making several improvements, *e.g.* the addition of a forced air heating system, an underground fuel tank, topsoil and gravel, and several interior improvements. Ronald Tarrant's uncontradicted affidavit alleges that he made cash expenditures of $6,745 and contributed $1,300 worth of his own labor to the making of the improvements.

In the summer of 1981, the Tarrants sold the residence to the U. S. Department of Housing and Urban Development for $76,000. From this amount, the expenses of sale and the two deeds of trust were satisfied, and $11,797.21 was disbursed to the Tarrants. The proper disposition of the remaining $13,161.89, the amount of the claims of Spenard and Plywood Supply, Inc., is the object of the present dispute.

## II. Timeliness of Debtors' Complaint to Avoid Judicial Liens

Spenard argues that the Tarrants are barred from filing a complaint to avoid a judicial lien on exempt property pursuant to § 522(f) after they have received their discharge. Relying chiefly on *In re Adkins*, 7 B.R. 325, 2 C.B.C.2d 1228, 6 B.C.D. 997 (Bkrtcy.S.D.Cal.1980), Spenard argues that debtors should be required to avoid liens before the expiration of the time for reaffirming obligations stemming from the liens, *i.e.*, before discharge, and that the interest in finally resolving questions concerning the debtors' property requires them to act to avoid liens before discharge.

Section 522(f) by its terms imposes no time limitation on actions to avoid judicial liens on exempt property. Section 522(f)(1) states:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; ...

. . . .

█ Several reasons compel this Court to join the majority of courts that have decided this issue and to hold that no time limitation exists on the filing of complaints to avoid liens pursuant to § 522(f). First, it would be unfair and perhaps raise questions of due process to find that the Tarrants had lost their right to avoid judicial liens pursuant to § 522(f) because of their failure to take action before discharge where the Tarrants had no notice of any time limitation. Several courts have refused to apply a time limitation under § 522(f) because of the lack of notice. *See, e.g., In re Bennett*, 13 B.R. 643, 645, 4 C.B.C.2d 1317, 8 B.C.D. 670, CCH Bkr.L.Rptr. ¶ 68,334 (Bkrtcy. W.D.Mich.1981); *In re Baskins*, 14 B.R. 110, 111, 5 C.B.C.2d 130, 132, 8 B.C.D. 161, 162, CCH Bkr.L.Rptr. ¶ 68,352 (Bkrtcy. E.D.N.C.1981). That unfairness would be compounded in the present case where the Tarrants may have relied on an order of this Court in forming their belief that no time limitation existed. Paragraph 5 of this Court's Order of Discharge Hearing Combined with Notice Thereof, issued on December 2, 1980, states that "Complaints to Avoid Liens under § 522(f) will be scheduled for trial or pre-trial upon filing of the complaint." In contrast, paragraph 2 of the same order states that "[m]otions for approval of agreements of the kind specified in 11 U.S.C. § 524(c) [reaffirmation] must be filed at or prior to said hearing, and will be heard and determined at said hearing." The Tarrants may have justifiably relied on the language of paragraph 5 of the order, in light of the contrast with paragraph 2, in determining that their complaint to avoid liens need not be filed before discharge.

Secondly, section 350 of the Code supports the argument that no general time limitation bars filing of complaints to avoid liens under § 522(f). Section 350 authorizes a bankruptcy court to reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause." From the legislative history it can be inferred that Congress contemplated that this section might be used to allow employment of a debtor's avoidance powers:

> Subsection (b) permits reopening of the case to administer assets, to accord relief to the debtor, or for other cause. Though the court may permit reopening of a case so that the trustee may exercise an avoiding power, laches may constitute a bar to an action that has been delayed too long. . . .

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 338 (1977); S.R.Rep.No. 95–989, 95th Cong., 2d Sess. 49 (1978), reprinted in U.S.Code Cong. & Admin.News 1978 at pp. 5835 and 6294. Courts have authorized lien avoidance under § 522(f) subsequent to the closing of a case. *In re Gortmaker*, 14 B.R. 66, 5 C.B.C.2d 127, 8 B.C.D. 67 (Bkrtcy. D.S.D.1981); *In re Newton*, 15 B.R. 640, 5 C.B.C.2d 843, 8 B.C.D. 514 (Bkrtcy.W.D. N.Y.1981). In light of the Congressional intent expressed by § 350 and in consideration of the interpretation given that section by the courts cited above, this Court will not foreclose the use of § 522 (f) to the Tarrants whose case has never been closed and whose assets were still being administered when they filed their complaint to avoid Spenard's lien.

Finally, several courts have held that the imposition of general time limitations on the filing of actions is normally a legislative function, and that since Congress has refrained from imposing any such limitation on a debtor's exercise of the rights granted the debtor by § 522, a Court should not create such a limitation. *In re Gortmaker,*

*supra,* 14 B.R. at 67, 5 C.B.C.2d at 129; *In re Smart,* 13 B.R. 838, 840; CCH Bkr.L. Rptr. ¶ 68,379 (Bkrtcy.D.Ariz.1981); *In re Swanson,* 13 B.R. 851, 854, 5 C.B.C.2d 52, 8 B.C.D. 13 (Bkrtcy.D.Idaho 1981); *Matter of Ward,* 14 B.R. 549, 554 (D.C.S.D.Ga.1981). Indeed one court has gone so far as to say that the force of a local bankruptcy court rule requiring that § 522(f) complaints be filed before discharge is overridden by the choice of Congress not to impose a limitation. *In re Newton, supra,* 15 B.R. at 641, 5 C.B.C.2d at 845. Although this Court does not agree that the establishment of time limitations for the filing of § 522(f) complaints is beyond the sphere of judicial rule-making, where no such court rule has been promulgated the concerns expressed in the above-cited cases support a refusal to apply an *ad hoc* limitation.

The reasoning of the court in *In re Adkins, supra,* relied on by Spenard, is not persuasive. That court based its decision to require the filing of § 522(f) complaints before discharge chiefly on the fact that § 524(c) of the Code requires that reaffirmation agreements be entered into before discharge.[3] The Court reasoned that since a debtor would need to know the extent to which an encumbrance could be avoided under § 522(f) before he could make a fully informed decision whether to reaffirm the debt, he ought to be required to initiate his action under § 522(f) before discharge. *Id.,* 7 B.R. at 327. But as other courts have pointed out, just because it may be in a debtor's best interest to avoid a part of a lien in time to reaffirm the debt is no reason to require the debtor to do so. *In re Swanson, supra,* 13 B.R. at 853. Additionally, a debtor's failure to make use of one remedy given him by Congress does not of itself justify the barring of a second independent remedy. *In re Smart, supra,* 13 B.R. at 840. There is no indication of a Congressional intent to apply the time limi-

---

**3.** Section 524(c) reads, in pertinent part:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, wheth-

er or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

. . . .

tation of § 524(c) to § 522(f). Indeed, the presence of the limitation in § 524(c) supports the argument that the lack of a limitation in § 522(f) indicates an intent that no limitation apply to complaints to avoid judicial liens.

■ This Court is aware that in a particular situation a debtor's delay in filing a complaint to avoid a lien under § 522(f) might be of such duration or might cause such prejudice to the creditor as to make allowance of the complaint inequitable. In such a situation the equitable defense of laches would be available to the creditor to defeat the debtor's attempt at lien avoidance. But in the present case, Spenard has made no showing that it has been injured or prejudiced by the Tarrants' delay in filing their complaint, that it detrimentally relied on the Tarrants' failure to earlier seek to avoid the lien, or that this Court's allowing the Tarrants to employ the remedy granted them by § 522(f) would work perceptible inequity. *See In re Newton, supra,* 15 B.R. at 642, 5 C.B.C.2d at 846; *In re Swanson, supra,* 13 B.R. at 854–855. Indeed, counsel for Spenard declined an opportunity to present a supplemental brief on this issue. Since this Court finds that Spenard's position was not materially and detrimentally altered by the Tarrants' delay in filing their complaint to avoid the lien, laches does not apply to prevent the action. In this case, the fresh start policy embodied in the exemptions granted debtors by the Code outweighs any interest in finality which creditors might have.

### III.  Time For Valuing Exempt Property

The parties disagree concerning the time at which the exempt property should be valued for purposes of determining the extent to which Spenard's judicial lien is avoided pursuant to § 522(f). The Tarrants urge that the value be determined as of the filing of the Chapter 7 petition, when the bankruptcy estate was created and the rights of all claimants to estate property were fixed. The parties have stipulated that at that time, August 1, 1980, the resi-

dence had a fair market value of $59,000. Spenard argues that the Court should value the property as of the time of sale to HUD, or as of the filing of the complaint to avoid the lien, or as of the time the lien is actually avoided. The house was purchased by HUD in the summer of 1981 for $76,000.

Since the Bankruptcy Act of 1898, it has been well-settled that the filing of a bankruptcy petition constitutes a "point of cleavage" at which exemptions are determined. In *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924), the Court, after noting the significance given to the time of filing by the provisions of the Bankruptcy Act concerning the creation of the estate, discharge, and exempt property, declared:

> These and other provisions of the Bankruptcy Law show that the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed. This has been recognized in our decisions. Thus we have said that the law discloses a purpose "to fix the line of cleavage" with special regard to the conditions existing when the petition is filed, (citations omitted), and that "it is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed, and that his estate passes actually or potentially into the control of the bankruptcy court." (Citations omitted). When the law speaks of property which is exempt and of rights to exemptions, it, of course, refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed. The provisions before cited show—some expressly and others impliedly—that one common point of time is intended, and that it is the date of the filing of the petition....

*Id.,* 266 U.S. at 313, 45 S.Ct. at 104. *See also* 1 Bkr.L.Ed., Summary, § 4:73 at pp. 112–113.

■ The Code provisions that parallel those of the Bankruptcy Act relied on by the Court in *White v. Stump* continue to emphasize the significance of the time of the filing of the petition as the point of separation. Section 541(a) creates the estate and § 727(b) grants discharge with reference to conditions existing on the date the petition is filed.[4]

Moreover, § 522 continues to emphasize the significance of the time of the filing of the petition for the determination of rights to exemptions. Section 522(b)(2)(A) continues the rule that exemptions are determined pursuant to the law in effect on the date of the filing of the petition.[5] Most significantly, § 522(a)(2) defines "value" for purposes of § 522 to mean fair market value as of the date of the filing of the petition.[6] Although the term "value" does not appear in § 522(f), that subsection concerns itself with the impairment of the debtor's exemptions, and those exemptions (at least the Federal exemptions) are defined by the use of the term "value". In any event, the definition of "value" given by § 522(a)(2) strongly suggests the intent of Congress that exempt property be valued as of the date of the filing of the petition. *See* 3 Collier on Bankruptcy, ¶ 522.03 (15th ed. 1981) at p. 522–14. There is nothing to suggest that Congress intended any different process of valuation to apply to exemptions claimed pursuant to State law, although the definition of "value" of § 522(a)(2) does not directly affect state law. Considerations of uniformity and of convenience combine with the Congressional intent as indicated by the Code sections cited above to require that the value of all exempt property be determined as of the date of the filing of the petition.

Cases under the Code have adhered to the concept of the filing of the petition as the point of determination of rights to both state and federal exemptions. *See, e.g., Matter of Rivera*, 5 B.R. 313, 315–316 (Bkrtcy.M.D.Fla.1980) (family status determined at date of filing); *Matter of Blue*, 5 B.R. 723, 724–726, 3 C.B.C.2d 4, (Bkrtcy.S.D. Ohio 1980) (determination of life insurance beneficiary); *Matter of Hahn*, 5 B.R. 242, 245, 2 C.B.C.2d 761 (Bkrtcy.S.D.Iowa 1980) (determination of debtor's occupation); *Cf. In re Andreotti*, 16 B.R. 28, CCH Bkr.L. Rptr. ¶ 68,490 (Bkrtcy.E.D.Cal.1981) (contrasting rule for involuntary cases). On the precise question faced by this Court, the court in *In re Pitre*, 11 B.R. 777, 781, CCH Bkr.L.Rptr. ¶ 68,212 (Bkrtcy.N.D.Ill.1981), determined that for purposes of § 522(f), exempt property is to be valued as of the time of the filing of the petition.

Spenard argues that the property should be valued at the time the Tarrants filed their complaint to avoid the judicial lien, or still later, at the time the lien is actually avoided. It argues that § 522(f) is not self-implementing, that the lien is not avoided until action is taken to avoid it, and that until then Spenard remains a holder of a secured interest in the property. Section 506(a) of the Code declares that the value of

---

4. Section 541(a) states, in pertinent part:

    The commencement of a case under section 301, 302, or 303 of this title creates an estate. . . .

    Section 727(b) states, in pertinent part:

    Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter. . . .

    Section 301 states:

    A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

    *Cf.* § 302(a) (Setting out a similar rule for determining the time of commencement and order for relief in joint cases.)

5. Section 522(b) states, in pertinent part:

    Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

    . . . .

    (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition. . . .

6. Section 522(a)(2) states:

    "[V]alue" means fair market value as of the date of the filing of the petition.

a creditor's secured interest is to be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use...." Finally, Spenard argues that it is inequitable to allow the Tarrants to capture the post-petition appreciation of the property.

Spenard correctly points out the similarity between the valuation of exempt property for purposes of § 522(f) and the determination of the secured status of a creditor pursuant to § 506(a).[7] Other courts have noted that the procedure of § 506 could be used to reach results similar to those reached through § 522(f). *See, e.g., In re Pitre, supra,* 11 B.R. at 781. Indeed it might have been the better practice for the Tarrants to have requested a determination of Spenard's secured status early in the administration of the estate.

■ But even a direct application of § 506(a) would not alter the conclusion that exempt property is to be valued as of the date of the filing of the Chapter 7 petition. Section 506(a) does not require that property be assigned the value that it has as of the date of the valuation hearing, but rather commands that the Court focus on the purpose for which the valuation is made. *See* 124 Cong.Rec. H 11,095 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S 17,411 (daily ed. Oct. 6, 1978). The purpose of the valuation here is the determination of the debtor's exemptions. The language of the Code, particularly the definition of "value" contained in § 522(a)(2), and the history of judicial interpretation concerning the "date

of cleavage" demonstrate that for purposes of determining exemptions, Congress intended that valuation be made as of the date of filing of the petition. Such a rule assures consistency among the various Code sections, provides for certainty for purposes of administration of the estate, and protects a debtor's fresh start by fixing property rights as of the date of filing.

■ Finally, the relationship of Sections 506(a) and 522(f) indicates that Spenard's lien is avoided in its entirety here. As of the date of filing of the Chapter 7 petition, the sum of the two deeds of trust outstanding on the residence plus the Tarrants' homestead exemption exceeded the fair market value of the residence. Had Spenard's secured status been determined at that time, Spenard would have been found to have had a wholly unsecured claim, since there would have existed in the estate no interest to which Spenard's lien could have attached. The unsecured claim would then have been subject to the Tarrants' discharge. The result reached pursuant to § 522(f) should be no different, particularly in light of what has already been said concerning the purpose of Congress to determine exemptions as of the date of filing of the petition and concerning the absence of time limitations on the filing of complaints pursuant to § 522(f). Since as of the date of filing of the Chapter 7 petition the sum of the unavoidable encumbrances plus the Tarrants' homestead exemption exceeded the fair market value of the property, § 522(f) operates to avoid fully the judicial lien of Spenard.[8]

---

7. Section 506(a) states:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of

such property and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

8. *See Matter of Dewyer,* 11 B.R. 551, CCH Bkr.L.Rptr. ¶ 68,403 (Bkrtcy.W.D.Pa.1981). *Contra, Matter of Larue,* 13 B.R. 846, 4 C.B. C.2d 1520 (Bkrtcy.N.D.Ill.1981).
   Although Spenard has argued that the Tarrants had no homestead exemption at the time of filing their petition because the deed of trust indebtedness and judgment liens exceeded the value of the property, and that the Tarrants therefore had no equity to support a homestead, it is clear that a debtor in the Tarrants' position may utilize § 522(f) where the encumbrances

*IV. Conclusion*

In summary, this Court holds that the Tarrants' complaint to avoid the judicial lien of Spenard, filed after discharge but during the administration of the estate, was timely, there being no time limitation placed on the use of § 522(f) and no grounds to support a defense of laches in this instance. This Court further holds that the Tarrants' exemptions are to be determined as of the date of filing of their Chapter 7 petition and that the value of their residence for purposes of § 522(f) is the fair market value as of that date. An order will be entered avoiding the lien of Spenard in its entirety.

sought to be avoided (when added to the non-voidable liens) exceed the value of the property. *See Matter of Lovett,* 11 B.R. 123, 4 C.B. C.2d 89, 7 B.C.D. 585 (D.C.W.D.Mo.1981), rejecting *inter alia,* the "Spenard type" reasoning as expounded in *Matter of Miller,* 8 B.R. 43 (Bkrtcy.W.D.Mo.1980). *See also In re Kursh,* 9 B.R. 801, 804, 4 C.B.C.2d 84, 7 B.C.D. 592 (Bkrtcy.W.D.Mo.1981) which collects various cases supporting lien avoidance and notes at page 802 that when the property in question is worth less than the amount of the exemption permitted by law, "the debtor retains the item free and clear of the lien. It also follows that if the value exceeds the authorized exemption, the lien remains fixed on the excess." The result is the same whether the value in question is the amount over and above the amount of the non-voidable liens, or simply the value of otherwise unencumbered property. If the value of the property or the value over and above the amount of the non-voidable liens is exhausted by the exemption claim, there is no value to which any part of the avoided lien can attach. The issue before the court in *In re Boteler,* 5 B.R. 408, 6 B.C.D. 798 (Bkrtcy.S.D. Ala.1980), wherein it was held that a judicial lien cannot be avoided when the non-voidable mortgage liens exceed the value of the property, is not present in the instant case.