In re William Harold SPAIN, Debtor.

John P. WHITTINGTON, Trustee,

v.

GILBRALTER SAVINGS & LOAN AS-SOCIATION, North Shelby County Fire District, Tax Collector of Shelby County, and Mary P. Spain, Defendants.

No. CV88–PT–1337–S.

United States District Court, N.D. Alabama, S.D.

Dec. 16, 1988.

**288**

J.N. Holt & W.K. Upshaw, Holt Cooper & Upshaw, Birmingham, Ala., for plaintiff.

Daniel Wainscott, Wainscott & Toffell, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

PROPST, District Judge.

This is an appeal by John P. Whittington, Trustee, from an order of the Bankruptcy Court denying the Trustee's petition to sell for division the homestead property of the debtor, William H. Spain, held jointly with his wife, Mary P. Spain, also an appellee herein. The trustee's petition to sell was filed pursuant to section 363(h) of the Bankruptcy Code.[1]

The trustee had appealed a prior order of the Bankruptcy court denying the trustee's petition to sell the property because, under the language of the Spains' deed, the property was held as a tenancy in common for life with cross contingent (nondestructible) remainders. The district court affirmed

that ruling, but the Eleventh Circuit reversed, holding that the pertinent language in the Spains' deed created a joint tenancy with destructible survivorship rights. *In re Spain*, 831 F.2d 236 (11th Cir.1987). The court of Appeals remanded the case to the bankruptcy court holding that "[b]ecause section 363(h) is clearly applicable to joint tenancies, the bankruptcy court must next consider whether a forced sale would be appropriate in light of the four factors set forth in that provision." *Id.* at 239.

On remand, the bankruptcy judge entered two rather lengthy opinions. In the first, 83 B.R. 61, he made the following findings of fact and conclusions of law:

(1) The homestead claimed as exempt by the debtor is exempt under Section 522(*l*), no objections having been filed. *See In re Adams*, 12 B.R. 540, 4 C.B.C.2d 1054 (B.Ct., D.Utah 1981); *In re Keckler*, 3 B.R. 155, 1 C.B.C.2d 574 (B.Ct., N.D. Ohio).

(2) Under Section 522(b), the exempt homestead never became property of the estate.

(3) The trustee is authorized to use, sell or lease property of the estate only if such property is property of the estate and wholly non-exempt.

(4) The trustee never became a tenant-in-common or joint tenant with the wife.

(5) Section 363(f) is not a grant of power, but a limitation on the right of the trustee to sell.

(6) Under Section 363(f)(1), the trustee must find his title or power to sell under state law.

(7) Section 363(h), despite its apparent language to the contrary, does not create

---

1. Section 363(h) of the Bankruptcy Code, 11 U.S.C. § 363(h) (1982), provides as follows:
   Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
   (1) partition in kind of such property among the estate and such co-owners is impracticable;

   (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
   (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and .
   (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

a right in the trustee to sell for division, except as title becomes vested in the trustee under state law.

(8) This reasoning is compatible with the holding in *In re Livingston*, 804 F.2d 1219 (11th Cir.1986).

(9) The trustee has no greater title by virtue of Section 363, 363(f) and 363(h).

(10) The trustee must establish his title and right to possession before resorting to Section 363(f) or (h).

(11) The court of Appeals decided that the husband and wife were joint tenants, but did not hold that the trustee was a joint tenant, and

There are many reasons why the trustee of a husband in bankruptcy cannot sell the wife's home. Whether for division or otherwise, Section 363(h) contains this very wise salient provision:

> ... only if—
>
> ... (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; 11 U.S.C. Section 363(h)(3).

One of the grounds on which this court may deny the trustee's right to sell is a finding by the court that the detriment to the wife and loss of her home, in which she has lived and raised her children since 1973, does far outweigh any monetary benefit to the trustee.

The bankruptcy judge then set the case for a further evidentiary hearing, after which he entered a second opinion, ruling that, under the reasoning of the U.S. Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Section 363(h) is an unconstitutional grant of power to the bankruptcy courts, and, therefore, he was without jurisdiction to entertain or hear this adversary proceeding. 85 B.R. 874. Alternatively, the bankruptcy judge ruled that "[t]he homestead was properly claimed as exempt and was therefore exempt, and

title thereto never passed to the Trustee." He further found that the trustee succeeded only to the bankruptcy debtor's interest, which he calculated to be $2,500.[2] Additionally, the judge further found that the administrative costs associated with a sale of the property would exceed any equity available to the creditors, and render a return to creditors of zero; therefore, under § 363(h)(3), the benefit to the estate would not outweigh the detriment to the co-owner, Mrs. Spain, of being forced out of her home.

The trustee appeals raising the following issues:

I. Did the bankruptcy court have jurisdiction to hear this adversary proceeding to sell property under section 363(h)?

II. Is the bankruptcy court's finding that the property in question never became property of the estate contrary to law?

III. Did the bankruptcy court err in its calculation of the benefit to the estate which would result from the sale of the property, and in its finding that the detriment to the co-owner outweighs the benefit of the sale?

■ The bankruptcy court's interpretation of applicable law is not accorded any presumptions; this court's review of legal issues is *de novo Citicorp (USA), Inc. v. Davidson Lumber Co.*, 718 F.2d 1030 at 1032 (11th Cir.1983). However, this court shall not set aside the bankruptcy court's findings of fact unless clearly erroneous, "and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Bankruptcy Rule 8013.

I.

■ As a plurality decision, the Supreme Court's holding in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), "establishes only that Congress may not vest in a non-Article III court the power to

---

**2.** Looking at the values as of the date of bankruptcy, the court found the market value of the property to be $100,000, from which he subtracted the value of the mortgage encumbrances ($80,000), and the homestead exemptions of both the debtor and Mrs. Spain (@ $7,500 each), leaving a net equity of $5,000, of which the trustee has one-half interest, or $2,500.

adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985).

In his opinion, Justice Brennan, joined by Justices Marshall, Blackmun, and Stevens, noted the following:

> Eliminating the distinction between "summary" and "plenary" jurisdiction, the Act grants the new courts jurisdiction over all "civil proceedings arising under title 11 [the Bankruptcy title] or arising in or *related to* cases under title 11." 28 U.S.C. § 1471(b) (1976 ed., Supp. IV) (emphasis added). *This jurisdictional grant empowers bankruptcy courts to entertain a wide variety of cases involving claims that may affect the property of the estate once a petition has been filed under Title 11. Included within the bankruptcy courts' jurisdiction are* suits to recover accounts, *controversies involving exempt property,* actions to avoid transfers and payments as preferences or fraudulent conveyances, and causes of action owned by the debtor at the time of the petition for bankruptcy. The bankruptcy courts can hear claims based on state law as well as those based on federal law. See 1 W. Collier, Bankruptcy ¶ 3.01, pp. 3–47 to 3–48 (15th ed.1982).

*Id.* 458 U.S. at 54, 102 S.Ct. at 2862. (footnote omitted) (emphasis added).

Justice Brennan further observed:

> The judges of the bankruptcy courts are vested with all of the "powers of a court of equity, law, and admiralty," except that they "may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment." 28 U.S.C. § 1481 (1976 ed.,

Supp. IV). In addition to this broad grant of power, Congress has allowed bankruptcy judges the power to hold jury trials, § 1480; to issue declaratory judgments, § 2201; to issue writs of habeas corpus under certain circumstances, § 2256; to issue all writs necessary in aid of bankruptcy court's expanded jurisdiction, § 451 (1976 ed. and Supp. IV); see 28 U.S.C. § 1651; and to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of Title 11, 11 U.S.C. § 105(a) (1976 ed., Supp. IV).

*Id.* at 55, 102 S.Ct. at 2863.

Justice Brennan found insufficient bases for comparison between the bankruptcy courts and three other situations[3] which had been held to constitute a recognizable "circumstance in which the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent with, rather than threatening to, the constitutional mandate of separation of powers." *Id.* at 64, 102 S.Ct. at 2868. He further rejected the arguments that bankruptcy as a "specialized area" warranted "distinctive treatment" in the interest of expediency, and that Congress's power to assign fact-finding functions to an "adjunct," is by analogy a basis for sustaining the plenary jurisdiction granted by the Bankruptcy Act.

In the wake of *Northern Pipeline Construction Co. v. Marathon Pipeline Co., supra,* in 1984, Congress enacted amendments to the Bankruptcy Act,[4] particularly 28 U.S.C. § 157, providing in pertinent part:

### § 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under

---

**3.** These three situations include the "territorial courts," courts-martial, and those courts and agencies created by Congress to adjudicate cases involving "public rights."

**4.** It is recognized that *Marathon* motivated Congress to pass the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See Matter of Wood,* 825 F.2d 90, 91 (5th Cir.1987) at footnote 2; and *In re Marill Alarm Systems, Inc.,* 81 B.R. 119, 122 (S.D.Fla.1987).

title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all *core proceedings arising under title 11, or arising in a case under title 11,* referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) *Core proceedings* include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

\*　　\*　　\*　　\*　　\*　　\*

(N) *orders approving the sale of property* other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) *other proceedings affecting the liquidation of the assets of the estate* or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. *A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.*

\*　　\*　　\*　　\*　　\*　　\*

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(emphasis added).

In concluding that this adversary proceeding, arising out of the trustee's petition to sell the homestead property, is a related "non-core" proceeding, the bankruptcy judge reasoned in part as follows:

> That the possession by the wife, even though shared with the husband, does not in any way make her vulnerable to actions by a trustee in seeking to oust her from her home or render her possession, occupation and enjoyment of the home any more vulnerable than existed under state law or common law is well settled. *See 2 Collier on Bankruptcy,* para. 23.06 at 507 (14th ed. 1976). She has every right to defend her possession and insist on due process of law by requiring the trustee to test his title against her right of possession in a possessory action, such as ejectment, actions in the nature of ejectment or suits to try title.

> If a wife of a bankrupt holds property merely as his agent, and not under a *bona fide* claim of lien or ownership, her possession is that of the bankrupt, and she is not an adverse claimant; but if her possession and claim are in good faith, her claim of lien or title must be adjudicated in a plenary suit.

> *2 Collier on Bankruptcy,* para. 23.06 at 507 (14th ed. 1976). (Many cases cited).

In *Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987), the Fifth Circuit undertook to analyze the impact of *Marathon* on jurisdictional issues under the 1984 amendments:

> *Marathon* held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant encompassed proceedings

too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges. The holding in *Marathon* suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by Congress; its concern is with the *placement* of that jurisdiction in non-Article III courts. In response to *Marathon,* Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter.

\* \* \* \* \* \*

For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under," "arising in a case under," or "related to a case under," title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. The Act does not define "related" matters. Courts have articulated various definitions of "related," but the definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." This definition comports with the legislative history of the statutory predecessor to section 1334. Neither *Marathon* nor general concerns of comity counsel against its use. We adopt it as our own.

The court went on to articulate a test for determining whether the proceedings in question are "core" or "non-core:"

[Section 157 of the 1984 Act] does not define core proceedings. Sub-section (b)(2) does provide a non-exclusive list of examples....

\* \* \* \* \* \*

[However, the] Act incorporates the principles suggested in the language of the *Marathon* opinions. The reference in the Act to "core" proceedings is taken directly from Justice Brennan's description of matters that involve the peculiar powers of bankruptcy courts. The Act describes non-core proceedings as "otherwise related", an apparent reference to Chief Justice Burger's description of the *Marathon* proceeding as "related only peripherally to an adjudication of bankruptcy". Mindful of the limitations of the plurality's holding and of Justice White's observations concerning state law, Congress added: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." The meaning of core proceedings is illuminated also by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. Apparently, the phrase as taken from 28 U.S.C. § 1331, conferring federal question jurisdiction in which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless,

would have no existence outside of the bankruptcy.

As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. *If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding, for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding*; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

Finally, the interpretation of core proceeding based on its equation with "arising under" and "arising in" proceedings comports with the interpretation suggested by *Marathon*. Justice Brennan's description of "core" matters parallels that of matters "arising under" title 11— matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with "arising in" proceedings—matters that could arise only in bankruptcy.

We hold, therefore, that a proceeding is core under Section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

(footnotes omitted) (emphasis added). *Id.* at 96–97.

Notwithstanding the fact that section 157(b)(2)(N) *expressly* lists as included among core proceedings "orders approving the sale of property," the court concludes that even under the Fifth Circuit's test above, these proceedings involve "a right created by the federal bankruptcy law" (i.e. the power of the trustee to sell property)

that, by its nature, arises only in the context of a bankruptcy case. *Accord In re Muller,* 72 B.R. 280 (C.D.Ill.1987), and *In re Uhlmeyer,* 67 B.R. 977 (B.D.Ariz.1986). *See also In re Townsend,* 72 B.R. 960, 967 (W.D.Mo.1987).

## II.

The trustee contends the bankruptcy court erred in concluding that the property in question never became part of the estate. The trustee argues *inter alia* that the law of the case doctrine precluded the bankruptcy court's consideration of this issue on remand.

As recently explained by the Eleventh Circuit in *U.S. v. White,* 846 F.2d 678, 684 (11th Cir.1988), "[t]he doctrine of the law of the case mandates that 'an appellate court decision on an issue ... be followed in all subsequent trial proceedings in the same case.' " (citations omitted). In *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440, cited in *U.S. v. White, supra,* the Eleventh Circuit discussed in more depth that doctrine:

> The law of the case doctrine has been termed "an amorphous concept." *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). This court has, however, delineated its general contours. In *United States v. Robinson,* 690 F.2d 869 (11th Cir.1982), we stated:
>
> > Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case.... However, the law of the case doctrine does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*Id.* at 872 (citations omitted); *see Dorsey v. Continental Casualty Co.,* 730 F.2d 675, 678 & n. 2 (11th Cir.1984); *Baumer*

*v. United States*, 685 F.2d 1318, 1320–21 (11th Cir.1982). Further, while the doctrine encompasses only those issues previously determined, *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979), the law is clear that it " 'comprehends things *decided by necessary implication* as well as those decided explicitly.' " *Dickinson v. Auto Center Manufacturing Co.*, 733 F.2d 1092, 1098 (5th Cir.1983) (emphasis in original) (quoting *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir.1978), *overruled on other grounds*, *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir.1983)); *see Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C.Cir.1983); *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir.1981). The doctrine's purpose is to bring an end to litigation. *See United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984); *Robinson v. Parrish*, 720 F.2d 1548, 1550 (11th Cir.1983). It also "protects against the agitation of settled issues and assures obedience of lower courts to the decisions of appellate courts." *Williams*, 728 F.2d at 1406.

In footnote 2 of its opinion, the court further noted that

> On remand a district court is not free to deviate from the appellate court's mandate. *See Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir.1982); *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 493 (7th Cir.), *cert. denied*, 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); *City of Cleveland v. Federal Power Comm'n*, 561 F.2d 344, 346 (D.C.Cir.1977). *See generally*, IB J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.404[10] (2d ed.1983) (discussion of relationship between appellate court's opinion as law of the case and mandate rule). To determine the scope of the mandate, it is appropriate, indeed often necessary, to look to the court of appeals' opinion. *See City of Cleveland*, 561 F.2d at 346–47.

The trustee contends that, in deciding that the debtor's "interest" in the property in question *is* within the categories of interests authorized to be sold by the trustee under § 363(h), by necessary implication, the Eleventh Circuit, in *In re Spain, supra*, decided that this interest of the debtor is a part of the estate, since § 363(h) only authorizes the sale of property in which the estate has an interest. The court agrees that, on remand, the bankruptcy court was precluded from making a determination that completely undercut the factual basis for the Eleventh Circuit's decision. Furthermore, in so doing, the bankruptcy court deviated from the Eleventh Circuit's mandate on remand, to wit:

> Because section 363(h) is clearly applicable to joint tenancies, *the bankruptcy court must next consider whether a forced sale would be appropriate in light of the four factors set forth in that provision.*

## CONCLUSION

For the foregoing reasons, we RE-VERSE and REMAND to the bankruptcy court *for further proceedings consistent with this opinion.*

(emphasis added).

However, even if the law of the case doctrine coupled with the mandate rule did not operate to bar the bankruptcy court's finding that the debtor's interest never became property of the estate, that finding is contrary to the express language of 11 U.S.C. § 541(a), which provides in pertinent part as follows:

**§ 541. Property of the estate.**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

. . . . .

all legal or equitable interests of the debtor in property as of the commencement of the case.

In *In Re Donaghy*, 11 B.R. 677, 679 (S.D.N. Y.1981), the bankruptcy court explained that:

> Since the adoption of the Bankruptcy Reform Act of 1978 it is no longer crucial to determine who · has title or possession

regarding property claimed by the trustee as an asset of the estate. Code § 541(a)(1) defines property of the estate in broad scope to include "all legal or equitable interests of the debtor in property as of the commencement of the case." *Thus, even exempt property must first come into the estate, subject to the claim of exemption,* thereby overruling *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1933) which excluded exempt property from the estate.

(emphasis added).

Therefore, the proper inquiry is not whether the debtor's interest in the property in question became an asset of the estate, but rather to what extent it is to be exempted therefrom under 11 U.S.C. § 522.

Thus, practically speaking, under § 541, as of the commencement of the bankruptcy proceedings, an estate is created, comprised of *all* interests of the debtor. The exemption section (§ 522) permits an individual debtor to *take out of the estate* that property that is necessary for a fresh start and for the support of himself and his dependents. *See In re Leach,* 15 B.R. 1005, 1008 (D.Conn.1981).

■ As discussed above, once property is brought into the estate, the debtor is permitted to remove any portion thereof for which he may claim an exemption. The "Notes of Committee on the Judiciary. House Report No. 95–595" for 11 U.S.C. § 522 state:

Under proposed 11 USC 541 all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from property of the estate under this section. Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the "value" of the property for purposes of exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptible to the extent of $5,000. This follows current law. The remaining value of the property will be dealt with in the bankruptcy case as is any interest in property that is subject to a lien.

The bankruptcy court found that, at the time of the filing of the petition, the property was encumbered by mortgages totalling $80,000. The debtor claimed his homestead exemption in the property valuing his equity at $7,500 (§ 522(d)(1)), to which the trustee filed no objections. The bankruptcy court found that because trustee failed to object, the property became exempt, and therefore title never passed to the trustee. See § 522(*l*). The failure of the trustee to object merely operates to allow the debtor's homestead exemption to stand *to the extent of the equity claimed in the property*—$7,500, up to the amount allowed by the applicable exemption statute, which in 1979 was $7,500.[5] *See Matter of Wittenwyler,* 62 B.R. 479, 481 (W.D.Wis.1986).

### III.

The trustee further contends that the bankruptcy court erred in its calculations of the amount the estate stood to benefit from the proposed sale of the residence, and its resulting finding that the detriment to the co-owner, Mrs. Spain, outweighed that benefit to the estate. Resolution of this issue requires a determination of the proper computation of the debtor's exemption under § 522, which, in this case, entails consideration of several factual and legal disputes arising out of the application of § 363(h).

■ The trustee argues that the bankruptcy court erred in several other respects in its calculation of the benefit to the estate of the proposed sale. First, the trustee contends the court erred in allocating a $7,500 homestead exemption to Mrs. Spain, the co-owner. The bankruptcy court did not cite any authority for allocating a homestead exemption to Mrs. Spain, and the trustee correctly points out that unless a case involves joint debtors, only one homestead exemption may be claimed under § 522(d)(2). Mrs. Spain is not a debtor in this case. Upon the sale of the property, the full value of her interest will be paid to

**5.** Ala.Code § 6–10–2 and 6–10–11 (1975).

her, after the outstanding mortgage is satisfied. While the court does not find it necessary to conclude that, under any set of circumstances, Mrs. Spain would not be entitled to a claim of exemption, it does not appear that such circumstances exist here.[6]

The trustee also complains that the bankruptcy court erred in refusing to use the *current values* of the property and the encumbrances thereon for purposes of calculating whether the benefit of the proposed sale outweighs the detriment to the co-owner under § 363(h). However, the trustee cites no authority in support of his position that the current values should be used. Nor did the bankruptcy judge cite any authority when he ruled that "the only relevant value [of the subject property] was that existing on the date of bankruptcy." And appellees have not supplied in their brief any authority to support this ruling. Because other matters, addressed more particularly below, necessitate that this issue be remanded for further consideration, this court declines to decide at this point an issue so inadequately presented by the parties or addressed by the court below. Therefore, the court directs that, on remand, the issue of the proper valuation date for purposes of § 363, be further considered.[7]

As a result of the bankruptcy court's ruling that 1979 values would be looked to in making the calculations under § 363(h), the fact that the subject property had been released from the second mortgage on it was not taken into account. In January 1980, the People's Bank and Trust Company, the second mortgagee on the subject property, filed a complaint seeking to foreclose on its mortgage. Apparently, the mortgage was secured not only by the property in question, but also by property of the debtor[8] in Prentiss County, Mississippi. By agreement with the trustee, People's Bank agreed to release its mortgage on the subject property, and satisfy its mortgage by foreclosing only on the Mississippi property. An order to that effect was entered by the bankruptcy court on July 20, 1982, granting People's Bank the right to foreclose. Thus, the outstanding second mortgage on the subject property, which is reflected in the record as having a value of $38,500 as of the commencement of these bankruptcy proceedings, was satisfied, thereby increasing the equity in the property.

The trustee contends that the additional equity created by the release of this mortgage should inure to the benefit of the estate for purposes of determining the propriety of the sale. Because this issue has not been adequately addressed, the court

---

**6.** While the constitution and statutes of Alabama (Ala. Constitution, Article X, § 205 and Ala.Code §§ 6–10–2 & 3) provide for and protect the right to homestead, within the size limits and value therein prescribed, as against levy and sale under execution or other process for the collection of debts, that right does not exist as against purchase money mortgagees. In his February 5, 1988 memorandum opinion, the bankruptcy judge found that "[t]he Spains executed a purchase money mortgage ... [and] they executed a second mortgage on the [subject property]...." It appears that, in these proceedings, the only claim against Mrs. Spain's one-half interest is one-half of the balance due on the first mortgage. The issue may be that Mrs. Spain is entitled to claim her interest, exemption or not.

**7.** Although the court is remanding this issue for further consideration, the court wishes to direct the parties and the court's attention to the fact that while § 363(h) refers to the "interest of any co-owner in property *in which the debtor had,*

*at the time of the commencement of the case, an undivided interest* as ... joint tenant," there is no clear indication in the statute that the *value of that interest* is to be determined as of "the commencement of the case," for purposes of determining the relative benefit to the estate versus the detriment to the co-owner. Compare *In re Tarrant,* 19 B.R. 360, 364–65 (Alaska 1982). *See also Marley v. United States,* 381 F.2d 738, 744, 180 Ct.Cl. 898 (1967) " '[I]t is equally well settled that [the power to sell free of liens] should not be exercised unless it is reasonably clear that *the property will bring* more than the encumbrances and expenses of sale.' In re Beardsley, 38 F.Supp. 799, 802 (D.Md.1941); Hoehn v. McIntosh, 110 F.2d 199, 202 (6th Cir. 1940)." (emphasis added).

**8.** The first mortgage given to Peoples Bank on the Mississippi property reflects that it was given by the debtor and Robert Sidney Spain, d/b/a Spain Equipment Company. The second mortgage that Peoples Bank had on the property in question was given by both the debtor and Mrs. Spain.

pretermits undertaking to decide the issue at this point. As guidance upon remand, should resolution of this issue be necessitated by a determination that present values are contemplated by § 363(h), the court directs the bankruptcy court's attention to 11 U.S.C. § 541(a)(7) which provides that the estate created by the commencement of a case under §§ 301, 302, or 303 is comprised *inter alia* of *"any interest* in property that *the estate acquires after the commencement of the case,"* "wherever located and by whomever held...." (Emphasis added). *See also Matter of Wittenwyler, supra* 62 B.R. at 482: "Upon avoiding a portion of the lien encumbering the estate's assets, the estate, not the debtor, increased its equity in the property."

The court further notes that, in presenting his analysis under § 363(h) based on 1988 values, the trustee has, in effect, credited not only the estate's interest with the amount of the satisfied second mortgage, but also the co-owner's interest:

Trustee's Analysis Based on 1988 Values

| | |
|---|---|
| $117,000 | Market Value |
| −35,500 | Balance due on 1st mortgage |
| 81,500 | Equity |
| −7,500 | Debtor's Exemption |
| 74,000 | Net Recovery |
| −37,500 | Co-owner's Interest |
| $ 37,000 | Estate's Benefit |
| −7,500 | Debtor's exemption |
| $ 41,000 | Estate's benefit |

However, as previously noted, the record indicates that the Mississippi property, used to satisfy the outstanding second mortgage, may have been owned by the debtor and/or his business, but it does not appear that Mrs. Spain held any interest in that property. If that is in fact the case, it may be that, in calculating the benefit to the estate of the proposed sale, Mrs. Spain would not be entitled to have her equity in the subject property increased by virtue of the release of the property of the debtor to satisfy the mortgage secured by both parcels. Indeed, it may be that the estate, by virtue of its release and/or satisfaction of the mortgage and note on which Mrs. Spain was also obligated, is entitled to some right of contribution from Mrs. Spain. See Annotation, *Contribution, Subrogation, and Similar Rights, as Between Co-tenants, Where One Pays the Other's Share of Sum Owing on Mortgage or Other Lien,* 48 A.L.R.2d 1305 (1956).[9]

Additionally, the court notes that the trustee has calculated Mrs. Spain's interest *after* he deducted the debtor's homestead exemption. Section 363(j) provides that

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, *less the costs and expenses,* not including any compensation of the trustee, *of such sale,* according to the interests of such spouse or co-owners, and of the estate.

While this section authorizes the trustee to deduct costs and expenses, it does not indicate that the trustee may also deduct the amount of the debtor's exemption in the property prior to calculating the co-owner's share of the proceeds.

Other issues which may merit consideration on remand include (1) whether some sort of account should be taken of the $103,000 in improvements the bankruptcy court found the Spains had made to the subject property since the commencement of these proceedings; and (2) whether the "detriment" contemplated by § 363(h)(3) was intended to encompass consideration of non-economic as well as economic detriment, notwithstanding bankruptcy court level authority holding that the court should consider "any loss, harm, injury or prejudice proximately following from an involuntary displacement." *In re Persky,* 78 B.R. 657 (E.D.N.Y.1987).[10]

In summary, this court holds that § 363(h) is not an unconstitutional grant of power to the bankruptcy courts; and,

---

**9.** The issue is complicated because the second mortgage covered the parcels.

**10.** *See also In re Vassilowitch,* 72 B.R. 803 (D.Mass.1987); *In re Addario,* 53 B.R. 335 (D.Mass 1985); *In re Levenhar,* 30 B.R. 976 (E.D.N.Y.1983).

therefore, that court has jurisdiction to hear this adversary proceeding. The court further holds that under § 541, debtor's interest in the subject residence is within the bankruptcy estate, subject to only the *debtor's* right to a homestead exemption in the amount of $7,500, as well as any outstanding liens or encumbrances not otherwise avoided. These two rulings of the bankruptcy court to the contrary are due to be reversed. The case is remanded for further consideration of the following issues:

(1) the proper valuation date for property sought to be sold under § 363(h) and its effect, if any, on the propriety of the sale under said section;

(2) the proper computation or crediting of the second mortgage from which the subject property was released by the trustee;

(3) whether under § 363(h), the value of the co-owner's interest is to be calculated before or after deduction of the debtor's homestead exemption;

(4) the proper accounting (if any at all) of the $103,000 worth of improvements made to the property by the Spains; and

(5) the propriety of consideration of non-economic detriment to co-owners under § 363(h).

An appropriate order will be entered.